[No. A045009. First Dist., Div. Five. May 31, 1990.]

NORTH STATE DEVELOPMENT COMPANY et al., Plaintiffs and Appellants, v.
PITTSBURG UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

COUNSEL

Miller, Starr & Regalia, John Sprankling, Edmund L. Regalia and William R. Plapinger for Plaintiffs and Appellants.

Lozano, Smith, Smith & Woliver, Louis T. Lozano and Barbara Booth Grunwald for Defendants and Respondents.

OPINION

**LOW, P. J.**—Plaintiffs North State Development Company (North State) and A. D. Seeno Construction Company (Seeno) appeal from the judgment dismissing their case after a demurrer was sustained to their third amended mandamus petition challenging the imposition of a "school facilities fee" on new residential construction by defendant Pittsburg Unified School District (the District). We conclude the trial court erred in applying the statute of limitations contained in Government Code section 54995[1] in sustaining the demurrer to a portion of the petition. We hold that sections 66008 and 66017 provide the procedures for challenging the fee imposed, which plaintiffs failed to follow. We affirm the judgment.

Section 53080, enacted in 1986 (added by Stats. 1986, ch. 887, § 8, p. 3080 and amended by Stats. 1986, ch. 888, § 6, p. 3091), empowers school districts to impose a fee on new residential and commercial developments to pay the cost of constructing or reconstructing school facilities (§ 53080, subd. (a), as amended by Stats. 1986, ch. 888, § 6). Cities and counties are

---

[1] All statutory references are to the Government Code unless otherwise indicated.

Several of the applicable statutes have been renumbered and amended without substantive effect on this appeal. For ease of reference, we will use the current section number after the first citation of the former statute.

prohibited from issuing building permits absent certification by the District that the developer has paid or otherwise complied with the fee requirement (§ 53080, subd. (b), as amended by Stats. 1986, ch. 888, § 6). The Legislature enacted this statute in response to the crisis of overcrowded school facilities caused by substantial development and population growth in our communities. (Stats. 1986, ch. 887, § 7, p. 3080.)[2] The maximum fee authorized on any residential development is $1.50 per square foot and is 25 cents per square foot of any commercial or industrial development. (§ 65995, added by Stats. 1986, ch. 887, § 11, pp. 3083-3084.) Both statutes went into effect on January 1, 1987. Aware of the pending legislation, the Board of Trustees of the District held hearings to consider the imposition of such development fees. Relying on a study (Enrollment Projections and Facility Needs) indicating a projected increase in pupil enrollment, the board adopted resolution No. 86-28(a), levying a $1.50 fee per square foot on new residential construction. This fee was to take effect as an urgency measure on January 1, 1987. (Res. No. 86-28(b).)

Through successive petitions for mandate (Code Civ. Proc., §§ 1085, 1094.5), first by itself, then with Seeno, North State challenged the fee as (1) improperly enacted, (2) arbitrary and lacking sufficient facts to support it, and (3) as an improper "special tax"[3] which was not enacted by two-thirds of the voters, as required by California Constitution, article XIII A, section 4. On January 29, 1987, North State filed its first petition, styled as administrative mandate, but voluntarily withdrew it following a demurrer by the District arguing that North State failed to allege the fee was imposed on one of its projects, as required by former section 50076.5 (former § 50076.5, added by Stats. 1986, ch. 189, § 1, p. 1056, now § 66017, renumbered and amended by Stats. 1988, ch. 418, § 1, No. 3 Deering's Adv. Legis. Service,

---

[2] Section 7 of Statutes 1986, chapter 887, provides: "The Legislature finds and declares as follows: [¶] (a) Many areas of this state are experiencing substantial development and population growth, resulting in serious overcrowding in school facilities. [¶] (b) Continued economic development requires the availability of the school facilities needed to educate the state's young citizens. [¶] (c) In growing areas of this state, the lack of availability of the public revenues needed to construct school facilities is a serious problem, undermining both the education of the state's children and the continued economic prosperity of California. [¶] (d) For these reasons, a comprehensive school facilities finance program based upon a partnership of state and local governments and the private sector is required to ensure the availability of school facilities to serve the population growth generated by new development. [¶] (e) The Legislature therefore finds that the levying of appropriate fees by school district governing boards at the rates authorized by this act is a reasonable method of financing the expansion and construction of school facilities resulting from new economic development within the district." (At p. 3080.)

[3] "As used in this article, 'special tax' shall not include any fee which does not exceed the reasonable cost of providing the service or regulatory activity for which the fee is charged and which is not levied for general revenue purposes." (§ 50076, added by Stats. 1979, ch. 903, § 1, p. 3112.)

p. 1577). Section 66017 requires that in order to challenge the fee as a "special tax," the fee must be directly imposed on the party as a condition of project approval and "[a]t least 30 days prior to initiating the action or proceeding, the party requests the . . . district to provide a copy of the documents which establish that the development fee does not exceed the cost of the service, facility, or regulatory activity for which it is imposed." (§ 66017, subd. (b)(2).)

On June 23, 1987, Seeno paid a fee of $1,981.50 to the District to obtain a building permit for lot 192. Title to the property was transferred to North State, which on September 29, 1987, filed its first amended petition alleging payment of the fee. A demurrer to this petition was sustained with leave to amend on the ground the action was improperly brought as a petition for administrative mandamus.

Plaintiffs filed a second amended petition identical in all material respects to the first amended petition, but as a petition for ordinary mandamus. (Code Civ. Proc., § 1085.) The District demurred, claiming plaintiffs lacked standing, that the statute of limitations had run, and plaintiffs failed to exhaust their administrative remedies. The court sustained the demurrer without leave to amend as to claims B, E, and F[4] on the grounds that (1) plaintiffs did not comply with the conditions for challenging the fee as a special tax required by section 66017, and (2) the petition was untimely under section 54995 since it was not filed within 120 days after the effective date of the resolution (Jan. 1, 1987).

Section 54995 provides that "[a]ny judicial action or proceeding to attack . . . an ordinance, resolution, or motion levying a new fee . . . shall be commenced within 120 days of the effective date of the ordinance . . . ." The court reasoned that the time the first petition had been filed no development fee had been imposed on any North State project. When North State first could claim it had paid the fee, after Seeno transferred title sometime around June 23, 1987, the time for filing had expired. The court also sustained the demurrer for failure to exhaust administrative remedies, but with leave to amend.

---

[4] Claims B, E, and F state, respectively: "Respondents failed to proceed in the manner required by law in that they had no specific plan for expending income from the development fee"; "Respondents failed to proceed in the manner required by law in that they did not rely on accurate, adequate information regarding the need for new educational facilities, cost and financing of such facilities, and reasonable basis for apportioning the cost"; "Respondents failed to proceed in the manner required by law in that they levied an unlawful special tax."

The court overruled the demurrer as to claims A, C, and D[5] "insofar as they pertain to matters other than the fee imposed on Lot 192." These claims alleged several particulars in which the District did not properly comply with the procedures for adopting the development fee. The court left open the possibility that plaintiffs could challenge the fee by alleging they paid it under protest pursuant to former section 65913.5 (former § 65913.5, added by Stats. 1984, ch. 653, § 1, pp. 2411-2412, now § 66008, renumbered and amended by Stats. 1988, ch. 418, § 4, No. 3 Deering's Adv. Legis. Service, pp. 1580-1581).

On May 5, 1988, plaintiffs filed their third amended petition, which challenged the fee on substantially the same grounds as the earlier petition, but alleged that they paid the fee to lot 192 in protest, in substantial compliance with section 66008.

A demurrer was sustained without leave to amend on the basis that plaintiffs did not substantially comply with the statute. This appeal followed.

I

■ Plaintiffs first contend that in ruling their "special tax" challenge (§ 66017) was untimely, the court misapplied the limitations period contained in section 54995. We agree. As discussed below, we conclude that sections 66017 and 66008 specifically control the method for challenging this "school facilities" fee imposed pursuant to sections 53080 and 65995.

A

Section 54995 prescribes a statute of limitations for challenging the levy of a new or modified fee or "service charge" by a local agency. It requires that "[a]ny judicial action or proceeding to attack, review, set aside, void, or annul an ordinance, resolution, or motion levying a new fee or service charge . . . shall be commenced within 120 days of the effective date of the ordinance, resolution, or motion . . . ." (§ 54995, added by Stats. 1982, ch. 289, § 5, pp. 929-930 and amended by Stats. 1988, ch. 926, § 2, No. 4 Deering's Adv. Legis. Service, p. 3323.) It was codified in title 5, division 2,

---

[5] Claim A, C, and D state, respectively: "Respondents failed to proceed in the manner required by law in that they did not provide all data at least ten days before the meeting of December 22, 1986"; "Respondents failed to proceed in the manner required by law in that they adopted resolution numbers 86-28(a) and 86-28(b) prior to the effective date of enabling legislation"; "Respondents failed to proceed in the manner required by law in that it is unclear and ambiguous when the development fee must be paid."

chapter 13.5 of the Government Code pertaining to limitation of actions to review local agency fees and charges. It was part of the same legislation, separately codified in chapter 13, which prescribed the manner in which "local agencies" could impose fees for such services as zoning variances, water/sewer connections, building inspections and issuing building permits. (Stats. 1982, ch. 289, §§ 1-4, commencing with § 54990, pp. 928-929.)

It is unclear why section 54995 was placed in a separate chapter, but its cross-reference to the definition of "local agency" in section 54994 suggests the Legislature intended it to relate to the fees imposed under chapter 13. (See Legis. Counsel's Dig., Assem. Bill No. 3431: 6 Stats. 1982 (Reg. Sess.) Summary Dig., pp. 104-105.) (See *San Marcos Water Dist.* v. *San Marcos Unified School Dist.* (1987) 190 Cal.App.3d 1083, 1086 [235 Cal.Rptr. 827] [challenge to the water district's capacity fee is subject to 120-day limitations period contained in section 54995]; accord *Winnaman* v. *Cambria Community Services Dist.* (1989) 208 Cal.App.3d 49, 53 [256 Cal.Rptr. 40] [developer's challenge to increase in water service fee is governed by section 54995].) Arguably, the fees referred to in chapter 13 would include residential development fees of the type imposed here, in the absence of subsequent clarifying legislation. But as we discuss below, section 54995 does not restrict challenges to the imposition of residential development fees. Section 54995 purposely provides a short limitations period so that any uncertainty over the validity of the ordinance may be quickly resolved and the local agency may promptly proceed with its program without undue disruption. Thereafter, a party may challenge the fee imposed by paying it in protest and following the procedures set forth in section 66008.

Any speculation about the procedure for attacking residential development fees was resolved in 1984, when the Legislature enacted section 66008. In its earlier form, section 66008 was added to chapter 4.2 of title 7, division 1, devoted to "Housing Development Approvals." (Stats. 1984, ch. 653, § 1, pp. 2411-2412.) That statute together with other statutes concerning procedures for the establishment of and protest against development fees were renumbered and combined in sections 66000 to 66017. Section 66008 established a procedure enabling parties to protest a local agency's imposition of residential development fees. (See Legis. Counsel's Dig., Sen. Bill No. 2136, 4 Stats. 1984 (Reg. Sess.) Summary Dig., p. 222.)[6] Section 66008 provides:

---

[6] As the Legislative Counsel's digest of the bill indicated, this law was to remedy the then current situation: "Existing law does not contain a procedure allowing a party to protest the imposition of any fees, taxes, assessments, dedications, reservations, or other exactions on residential housing developments by local governmental entities. [¶] This bill would permit any party to protest the imposition of those exactions in accordance with a specified procedure; would permit any party who so protests to file an action to attack, review, set aside,

"(a) Any party may protest the imposition of any fees, . . . or other exactions imposed on a residential housing development by a local agency by meeting both of the following requirements: [¶] (1) Tendering any required payment in full . . . . [¶] (2) Serving written notice on the governing body of the entity which notice shall contain . . . the following information: [¶] (A) A statement that the required payment is tendered . . . under protest. [¶] (B) A statement informing the governing body of the factual elements of the dispute and the legal theory forming the basis for the protest." The party must file the protest "at the time of approval or conditional approval of the development or within 90 days after the date of the imposition of the fees . . . . Any party who files a protest pursuant to subdivision (a) may file an action to attack, review, set aside, void, or annul the imposition of the fees . . . imposed on a residential housing development by a local agency within 180 days after the date of the imposition." (§ 66008, subd. (d).) Accordingly, we reject plaintiffs' contention that under Code of Civil Procedure section 343 they have four years to challenge the fees imposed.

By enacting section 66008, the Legislature unambiguously established the specific procedure for challenging the imposition of residential development fees; the more general section 54995 does not govern the development fee imposed. Where a special and a general statute are in conflict, the special statute controls. (Code Civ. Proc., § 1859; *Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687].) Any remaining doubt was eliminated when the Legislature, in 1989, enacted section 53080.1, which limits the protest of a "school facilities fee" imposed under section 53080 to the procedures contained in sections 66008 and 66009. (§ 53080.1, added by Stats. 1989, ch. 1209, § 20, No. 6 Deering's Adv. Legis. Service, pp. 4660-4661.) Subdivision (d) of section 53080.1 provides: "Any party on whom a fee, charge, dedication, or other requirement has been directly imposed pursuant to Section 53080 may protest the establishment or imposition of that fee, charge, dedication, or other requirement in accordance with Section 66009, except that the procedures set forth in Section 66008 are deemed to apply, for this purpose, to commercial and industrial development, as well as to residential development." Accordingly, we hold that the trial court erred in applying the 120-day statute of limitations period of section 54995 to plaintiffs' challenge of the fee imposed as a special tax.

## B

In any judicial action challenging the imposed fee as a "special tax," the city, county or district has "the burden of producing evidence to establish

---

void, or annul those impositions; and would specify the effect of the filing of that protest or action upon conditional approvals of residential housing developments." (*Ibid.*)

that the development fee does not exceed the cost of the service, facility, or regulatory activity for which it is imposed." (§ 66017, subd. (a).) Before a party may challenge the fee, the fee must be (1) "directly imposed on the party as a condition of project approval," and (2) at least 30 days before commencing the action the party must request the governing entity "to provide a copy of the documents which establish that the development fee does not exceed the cost of the service, facility, or regulatory activity for which it is imposed." (§ 66017, subds. (b)(1), (b)(2).)

The trial court treated claims B, E, and F as challenging the fee as a special tax (see *ante*, fn. 4), and sustained the demurrer because the action was not filed within 120 days of imposition of the fee (Jan. 1, 1987) pursuant to section 54995. In reaching its result, the trial court apparently interpreted section 66017 as creating separate procedures for challenging the development fee, independent of the method for protesting the fee imposed pursuant to section 66008. This was error.

The procedure to attack the residential development fee imposed is provided in section 66008. There is nothing in the history of sections 66008 and 66017 to indicate that the Legislature was creating two independent procedures for protesting the imposition of residential development fees. To the contrary, the statutory language indicates that section 66017 was intended to incorporate the limitations period of section 66008.

This is evident in the first sentence of section 66017, which begins, "In any judicial action or proceeding" to attack the imposition of a development fee as a special tax. This wording is different from the language used in section 66008, establishing the procedure to protest the fee imposed. (§ 66008, subd. (d).) By using the phrase "In any . . . action," section 66017 presupposes the existence of a judicial action brought under the procedures specified in section 66008. Moreover, the absence of a period of limitations in section 66017 further suggests that the later-enacted section 66017 was not independent, but dependent upon section 66008, and that it necessarily adopted the limitations period contained in section 66008. We hold that any action in which the party challenges the residential development fee imposed as a "special tax" must comply with the requirements of section 66008, as well as the specific requirements of section 66017.

## II

■ We must now decide if the plaintiffs complied with the procedural requirements under section 66008.

Section 66008 requires a party to pay the fee imposed and file a written protest stating (1) the fee has been paid or otherwise satisfied and (2) the facts and the legal theory forming the basis for the protest. The written protest must be filed at the time of approval or conditional approval of the development or within 90 days after the fee has been imposed. A judicial action attacking the fee must be filed within 180 days after the date the fee has been imposed.

Plaintiffs concede they never filed a written protest as required by the statute, but nevertheless contend they substantially complied with its spirit. The record does not support their claim. Plaintiffs assert that by the time they paid the fee they had substantial communications with defendants and voiced their objections of the fee to the District's counsel. They argue that these conversations, taken together with the filing of the original petition for writ of mandate on January 29, 1987, alerted the District to the factual and legal bases of their protest, in substantial compliance with the statute.

Plaintiffs' efforts failed to comply with the statute. At the time the first petition was filed, Seeno was not a party to the lawsuit and North State had not yet paid any fee. Payment of or tendering the fee is the threshold requirement for proceeding under this statute. Failure to do so at the time the petition was first filed is fatal to their action.

This petition was immediately withdrawn and the next one was not filed until September 29, 1987, eight months later. This subsequent action exceeded the 180-day limitations period prescribed by section 66008. As expressly provided by the statute, this lapse too is sufficient to bar the action: "Thereafter [after 180 days], notwithstanding any other law to the contrary, all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the imposition." (§ 66008, subd. (d).) The purpose of the statute—to give the District notice of the protest at the earliest time and provide it with an opportunity to avoid a lawsuit—was not promoted by plaintiffs' actions. Nor is it sufficient that plaintiffs' counsel spoke to the District's attorneys about the dispute. The statute requires a written protest. The trial court was correct in finding that plaintiffs did not properly protest the imposition of the fee. The challenge to the residential development fee imposed was defective and it must be dismissed. At oral argument, plaintiffs stated they were seeking another development permit. If the above described procedures are correctly followed, a new challenge may be made to the fees imposed.

The judgment of dismissal is affirmed.

King, J., and Haning, J., concurred.