[No. F027142. Fifth Dist. June 7, 1999.]

N.T. HILL INC., Plaintiff and Appellant, v.
CITY OF FRESNO, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

## COUNSEL

Motschiedler, Michaelides & Wishon, James A. McKelvey and Barbara A. McAuliffe for Plaintiff and Appellant.

Hilda Cantu Montoy, City Attorney, and Robert D. Gabriele, Assistant City Attorney, for Defendant and Respondent.

## OPINION

**DIBIASO, Acting P. J.**—Plaintiff N.T. Hill Inc., doing business as R. J. Hill Company (Hill), appeals from a judgment in favor of defendant City of Fresno (City) in a lawsuit brought by Hill to challenge the legality of certain water capacity fees assessed against a residential subdivision being developed by Hill. We will reverse. In the published portion of this opinion we compare Government Code sections 66020 and 66022 and describe their respective applications with respect to fees of the type in issue.

### STATEMENT OF CASE AND FACTS

In June 1994, Hill submitted a vesting tentative subdivision map application to the City for the development of Golden Dawn Ranch, a proposed residential subdivision of 449 single-family homes on approximately 109 acres known as tract No. 4677. The tract was located in an area identified by the City as "water supply area '501.'" On October 5, 1994, the City approved Hill's vesting tentative map for the development, on the condition (among others) that Hill pay a water well fee or, in the alternative, dedicate a well site and construct a water well and wellhead treatment facilities. Hill chose to pay the fee, which was calculated to be $253 per dwelling unit. By mid-October 1994, Hill had appealed the planning commission's decision to attach the water supply conditions to the approval of Hill's tentative map.

On January 7, 1995, during the pendency of Hill's appeal, the Fresno City Council adopted ordinance No. 95-4, along with a contemporaneously adopted resolution (No. 95-15), which increased residential subdivision water fees in area No. 501 from $253 to $1,416 per dwelling unit. The

ordinance became effective on March 19, 1995. The justification for the increase was the council's determination that groundwater contamination existed in water supply area No. 501. Another resolution (No. 95-18), adopted by the City concurrently with ordinance No. 95-4, applied the new water service fees to then vested tentative maps, under the provisions of Government Code section 66498.1, subdivision (c)(1).[1]

On March 14, 1995, the city council denied Hill's appeal of the imposition of water supply fees on tract No. 4677. On March 24, 1995, Hill filed suit against the City, claiming on various grounds that the fees could not be legally assessed against Hill's project.

The City demurred to Hill's complaint, arguing in relevant part that Hill had failed to allege facts sufficient to show compliance with section 66020, and, in particular, the requirement of this statute that a written protest to the City be submitted before filing a lawsuit. On April 28, 1995, counsel for Hill wrote a letter to the City protesting the imposition of the $1,416 per unit fee on tract No. 4677.

Hill then filed, on June 1, 1995, a first amended complaint, which alleged the action to be one for both administrative mandamus pursuant to Code of Civil Procedure section 1094.5 and traditional mandamus pursuant to Code of Civil Procedure section 1085. The amended complaint contained eight causes of action.[2] The first asserted the City had abused its discretion in imposing the fees upon tract No. 4677 because the City, when it passed resolution No. 95-18, failed to act in compliance with section 66498.1 or on the basis of substantial evidence of an emergency. The second asserted the City had violated section 66001 because it failed to determine there was a reasonable relationship between (i) "the use of the Fees imposed on [tract No. 4677] and the services or facilities required to serve the [tract]," (ii) "the need for the water treatment facilities to be constructed from the revenues generated by [ordinance No. 95-4] and the need for such facilities to serve the [tract No. 1477] project," and (iii) "the amount of the Fee imposed on the [tract] and the cost of the water treatment facilities needed to serve that [tract]." The third asserted the City had violated section 66005 because the fees imposed on tract No. 4677 exceeded "the cost of any service or facility reasonably required to serve that [tract]." The fourth asserted the City had violated section 66013 because "the fees exceed the cost of any service or

---

[1] All statutory references are to the Government Code unless otherwise indicated.

[2] We refer to the eight designated counts separately for purposes of discussion. In point of fact, the amended complaint in reality consists of a single combined "cause of action" because it employs the unnecessary, confusing, repetitive, and utterly irritating practice of incorporating all prior allegations into each succeeding separately numbered count.

facility required to serve [tract No. 4677]." The fifth asserted a right to a declaration that ordinance No. 95-4 "is invalid and inapplicable to the vesting tentative map for [tract No. 4677]" because the map "was accepted for filing prior to the enactment of the Ordinance" and because the City failed to "comply with . . . sections 66001 and 66005." The sixth asserted that Hill was a City taxpayer entitled to an injunction under Code of Civil Procedure section 526, subdivision (a), because the water treatment and filtration facilities to be constructed for tract No. 4677 "[t]hrough the sale of bonds and the imposition of the ordinance" were an "unnecessary and wasteful" illegal expenditure of public funds. The seventh asserted that ordinance No. 1477 was a special tax which violated the provisions of the California Constitution requiring a two-thirds vote of the qualified electorate before such a tax may be imposed. The eighth asserted a right to recover attorney fees under section 800 and Code of Civil Procedure section 1021.5.

The first four counts of Hill's amended complaint each included an allegation that Hill had filed a timely protest of the fees with the City under section 66020 and had brought the action within the specified limitations periods set out in section 66020 and in section 66499.37. The third and seventh causes of action included an allegation that the action had been brought within the specified limitations period set out in section 66022.

In its answer to Hill's first amended complaint, the City pled affirmative defenses to the effect that Hill had failed to comply with the requirements of section 66020.

The superior court department to which the case was assigned for trial bifurcated the issue of Hill's compliance with section 66020 and set a schedule for the submission of briefs on the question "whether [Hill] failed to exhaust his administrative remedies by failing to satisfy all of the mandatory requirements of [section] 66020 in a timely fashion." The parties thereafter filed their respective briefs as well as evidence in the form of various declarations. The declarations described the background of the controversy and established certain relevant dates; there was no material factual dispute between the parties' respective declarations.

In its presentations to the trial court, the City argued Hill was required to either tender the water fees with its protest letter or provide satisfactory evidence that other arrangements had been made to pay the fees when due, neither of which Hill had done. In its presentation, Hill claimed it had complied with section 66020 because the fees were not due when the protest

was made and therefore no tender or arrangements for payment were required.[3] Alternatively, Hill argued it was entitled to proceed to trial on its first and fourth causes of action because these counts pled facial challenges to the fee ordinance which were not governed by section 66020 but rather were governed by section 66022, the demands of which Hill had fully satisfied.

The trial court found for the City with respect to its defense based upon section 66020. The court concluded: "In summary, first, Hill has not complied with the mandates of section 66020, subdivisions (a)(1) and (a)(2)(A), because of a failure to provide the required tender and the failure to make other satisfactory arrangements (and the failure to provide a written statement that this has been done). Second, even though Hill contends that the first and fourth causes of action do not challenge the imposition of fees upon a residential subdivision, the specific allegations in those causes of action belie that contention. Third, section 66020, by its own language, indicates a clear and unambiguous legislative intent to govern this action. An analysis of the history and practical effect of section 66020 supports this conclusion. Fourth, should there be conflict between the applicability of the more general statutes (66499.37 and 66022) and the more specific statute (66020), the more specific statute governs."

Judgment against Hill on its entire complaint was thereafter entered.

## DISCUSSION

### I.

The water fees in issue here constitute "capacity charges" because they were to be used to pay "for facilities in existence" or "for new facilities to be constructed in the future that are of benefit to the person or property being charged." (§ 66013, subd. (b)(3).) Consequently, any judicial action or proceeding to "attack, review, set aside, void or annul the ordinance, resolution, or motion imposing" such capacity charges must be brought "pursuant to Section 66022." (§ 66013, subd. (g).) Section 66022 provides:

"(a) Any judicial action or proceeding to attack, review, set aside, void, or annul an ordinance, resolution, or motion adopting a new fee or service charge, or modifying or amending an existing fee or service charge, adopted by a local agency, as defined in Section 66000, shall be commenced within 120 days of the effective date of the ordinance, resolution, or motion.

"If an ordinance, resolution, or motion provides for an automatic adjustment in a fee or service charge, and the automatic adjustment results in an

---

[3]Hill did not pay any part of the fees until roughly one year later.

increase in the amount of a fee or service charge, any action or proceeding to attack, review, set aside, void, or annul the increase shall be commenced within 120 days of the effective date of the increase.

"(b) Any action by a local agency or interested person under this section shall be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure.

"(c) This section shall apply only to fees, capacity charges, and service charges described in and subject to Sections 66013 and 66014." (§ 66022.)[4]

Section 66020, relied upon by the trial court, provided in relevant part:

"(a) Any party may protest the imposition of any fees, dedications, reservations, or other exactions imposed on a residential housing development by a local agency by meeting both of the following requirements:

"(1) Tendering any required payment in full or providing satisfactory evidence of arrangements to ensure performance of the conditions necessary to meet the requirements of the imposition.

"(2) Serving written notice on the governing body of the entity, which notice shall contain all of the following information:

"(A) A statement that the required payment is tendered, or that any conditions which have been imposed are provided for or satisfied, under protest.

"(B) A statement informing the governing body of the factual elements of the dispute and the legal theory forming the basis for the protest.

". . . . . . . . . . . . . . . . . . . . . .

"(d) A protest filed pursuant to subdivision (a) shall be filed at the time of approval or conditional approval of the development or within 90 days after the date of the imposition of the fees, dedications, reservations, or other exactions to be imposed on a residential housing development. Any party

---

[4]Section 66014 describes certain types of service fees that may be assessed by a local agency, none of which are in issue in this case. Also, notwithstanding the limitation in subdivision (c) of section 66022, section 66016, subdivision (e), makes section 66022 applicable to any "judicial action or proceeding to attack, review, set aside, void, or annul the ordinance, resolution, or motion levying" a variety of fees authorized by several statutes found elsewhere in the Government Code or in the Health and Safety Code, the Public Resources Code, or the Public Utilities Code.

who files a protest pursuant to subdivision (a) may file an action to attack, review, set aside, void, or annul the imposition of the fees, dedications, reservations, or other exactions imposed on a residential housing development by a local agency within 180 days after the date of the imposition. Thereafter, notwithstanding any other law to the contrary, all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the imposition. Any proceeding brought pursuant to this subdivision shall take precedence over all matters of the calendar of the court except criminal, probate, eminent domain, forcible entry, and unlawful detainer proceedings.

"(e) If the court finds in favor of the plaintiff in any action or proceeding brought pursuant to subdivision (d), the court shall direct the local agency to refund the unlawful portion of the payment, with interest at the rate of 8 percent per annum, or return the unlawful portion of the exaction imposed.

"(f)(1) If the court grants a judgment to a plaintiff invalidating, as enacted, all or a portion of an ordinance or resolution enacting a fee, dedication, reservation, or other exaction, the court shall direct the local agency to refund the unlawful portion of the payment, plus interest at an annual rate equal to the average rate accrued by the Pooled Money Investment Account during the time elapsed since the payment occurred, or to return the unlawful portion of the exaction imposed.

"(2) If an action is filed within 120 days of the date at which an ordinance or resolution to establish or modify a fee, dedication, reservation, or other exactions to be imposed on a residential housing development takes effect, the portion of the payment or exaction invalidated shall also be returned to any other person who, under protest pursuant to this section and under that invalid portion of that same ordinance or resolution as enacted, tendered the payment or provided for or satisfied the exaction during the period from 90 days prior to the date of the filing of the action which invalidates the payment or exaction to the date of the entry of the judgment referenced in paragraph (1).

"(g) Approval or conditional approval of a development occurs, for the purposes of this section, when the tentative map, tentative parcel map, or parcel map is approved or conditionally approved or when the parcel map is recorded if a tentative map or tentative parcel map is not required.

"(h) The imposition of fees, dedications, reservations, or other exactions occurs, for the purposes of this section, when they are imposed or levied on a specific development."

These statutes are a part of the Mitigation Fee Act, section 66000 et seq. (§ 66000.5.) A "fee" is defined in the Mitigation Fee Act as "a monetary exaction other than a tax or special assessment, whether established for a broad class of projects by legislation of general applicability or imposed on a specific project on an ad hoc basis, that is charged by a local agency to the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project . . . ." (§ 66000, subd. (b).)[5]

## II.

### A.

■ Hill first maintains the trial court was wrong in concluding that a party who challenges the fundamental legality of a water capacity charge ordinance must comply with the protest procedure set out in section 66020. As Hill sees it, sections 66020 and 66022 apply to distinct actions relating to the fees in issue here—section 66022 governs when the aim of a lawsuit is the invalidation of a local agency decision enacting a capacity charge of general application to all covered developments in the impacted locale and section 66020 governs when the aim of the lawsuit is the invalidation of the "specific calculation and application of those [charges] when they are actually imposed [upon an identified] project" in the impacted locale. Hill therefore argues that the portions of its first amended complaint which pled claims disputing the legality of the capacity charge ordinance should not have been dismissed under the authority of section 66020. Hill relies on *Balch Enterprises, Inc.* v. *New Haven Unified School Dist.* (1990) 219 Cal.App.3d 783 [268 Cal.Rptr. 543], *North State Development Co.* v. *Pittsburgh Unified School Dist.* (1990) 220 Cal.App.3d 1418 [270 Cal.Rptr. 166], and *Trend Homes, Inc.* v. *Central Unified School Dist.* (1990) 220 Cal.App.3d 102 [269 Cal.Rptr. 349]. As we understand it, the City's position is that the trial court was correct in deciding that section 66020 barred all the claims pled by Hill in its first amended complaint.

We agree with Hill. We conclude that section 66022 comes into play when a lawsuit challenges a legislative decision by a local agency promulgating or changing a section 66013 capacity charge and section 66020 comes into play when a lawsuit challenges an adjudicatory decision by a local agency imposing such a charge on a specific residential development. Put slightly differently, section 66022 applies when the plaintiff's goal is a judicial finding that the legislative decision adopting the charge cannot be enforced in any circumstance against any existing or future development because of

---

[5]Certain classes of fees, not of relevance here, are excepted from this definition.

some procedural or substantive illegality in the decision and section 66020 applies when the plaintiff's goal is a judicial finding that the charge set by the legislative decision cannot be demanded or collected in whole or part with respect to the specific development. In the latter situation, the fundamental validity of the legislative decision enacting or modifying the fee is not in issue.

██ The difference between a "legislative decision" and an "adjudicatory decision" was explained in *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34, footnote 2 [112 Cal.Rptr. 805, 520 P.2d 29], as follows: "Generally speaking, a legislative action is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual application of such a rule to a specific set of existing facts."[6] The court in *Balch Enterprises, Inc. v. New Haven Unified School Dist., supra,* 219 Cal.App.3d at page 791, applied these concepts in a case involving development fees; the court concluded in relevant part that "[s]ince the [local agency's] decision to impose the development fees applied generally to all future commercial and industrial development within its jurisdiction, the decision had a legislative rather than adjudicatory character." (See also *Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 327-328 [4 Cal.Rptr.2d 897].)[7]

---

[6] Adjudicatory decisions of governmental agencies are reviewed under administrative mandamus (Code Civ. Proc., § 1094.5), while legislative decisions by governmental agencies are reviewed under ordinary mandamus (Code Civ. Proc., § 1085). (*Balch Enterprises, Inc. v. New Haven Unified School Dist., supra,* 219 Cal.App.3d 783, 791.) Review of legislative action under traditional mandamus " 'is limited to an examination of the proceedings before the agency to determine whether its action has been arbitrary or capricious, or entirely lacking in evidentiary support, or whether it has failed to follow the procedure and give the notices required by law.' " (*Joint Council of Interns & Residents v. Board of Supervisors* (1989) 210 Cal.App.3d 1202, 1209 [258 Cal.Rptr. 762].) Review of adjudicative action under administrative mandamus "requires a determination of 'whether substantial evidence supports the . . . agency's findings and whether the findings support the agency's decision.' " (*Ibid.*)

[7] We are concerned with only the water capacity charges described in section 66013 and not with any other type of development fee, condition, reservation, or exaction. Whether there exists in the law provisions applicable to lawsuits challenging a legislative decision to adopt or modify other fees or exactions relating to the development of property is beyond the scope of the issues raised in this case. We do note, however, that section 66021 provided in part at all times relevant that a person upon whom a "fee, tax, assessment, dedication, reservation, or other exaction has been imposed, the payment or performance of which is required to obtain governmental approval of a development . . . may protest, as provided in Sections 66020 and 66475.4, the *establishment or imposition* of the fee, tax, assessment, dedication, reservation, or other exaction." (Italics added; see *Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 863 [50 Cal.Rptr.2d 242, 911 P.2d 429] [eminent domain; recreation and public art fees].) Section 66475.4 was repealed effective January 1, 1996 (Stats. 1987, ch. 803, § 2, pp. 2512-2513) and section 66021 was amended in 1998 to eliminate reference to it (Stats. 1998, ch. 689, § 7). We also note (1) section 66024, which puts certain conditions upon actions challenging a development fee as constituting a "special tax" requiring voter approval (see § 50075 et seq.),

## B.

■ Our decision is founded upon two well-known principles of statutory construction.[8] ■ The first is the rule that the "plain and commonsense" meaning of the statutory language controls. (*Garcia* v. *McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906].) ■ In our view, it is apparent from the "plain" and "commonsense" meaning of the words of the two statutes under scrutiny here that they were intended to apply to different categories of actions. On the one hand, section 66020 consistently refers in the singular to "*a* development project." (Italics added.) Thus, subdivision (d)(2) of the statute sets a 180-day limitations period for the filing of lawsuits which seek to "attack, review, set aside, void, or annul the imposition of the fees, dedications, reservations, or other exactions imposed on *a development* project by a local agency." (Italics added.) Subdivision (h) of the statute provides that the "imposition of fees . . . occurs . . . when they are imposed or levied on *a specific development.*" (Italics added.)

Section 66020 also contains provisions which contemplate that the particular development project will be in progress to the point where fees are capable of being precisely ascertained and that the required protest will be presented by the person responsible for the payment of the fees in dispute. A "development project" for purposes of section 66020 is "any project *undertaken* for the purpose of development." (§ 66000, subd. (a), italics added.) "Undertake" means to "enter upon," "set about," or "attempt." (Webster's New Internat. Dict. (3d ed. 1993) p. 2491.) Subdivision (d)(1) of section 66020 directs that a protest must be filed "at the time of approval or conditional approval of the development or within 90 days after the date of the imposition of the fees." According to subdivision (g), "[a]pproval" or "conditional approval" occurs "when the tentative map, tentative parcel map, or parcel map is approved or conditionally approved or when the parcel map is recorded if a tentative map or tentative parcel map is not required." According to subdivision (d)(1), the local agency must provide the developer with a "notice in writing at the time of approval of the project or at the time of the imposition of the fees . . . a statement of the amount of the fees . . . and notification that the 90-day" period within which to file a protest "has

---

and (2) section 66499.37, which requires any "action or proceeding to attack, review, set aside, void or annul the decision of an advisory agency, appeal board or legislative body concerning a subdivision, or any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto" must be filed and served within "90 days after the date of such decision."

[8]The legislative history is of no material assistance in ascertaining the Legislature's intent with respect to either section 66020 or 66022.

begun." These conditions are meaningless with respect to a "development project" that is not substantially underway. A development project that has not begun has not been "undertaken." A development project that has not advanced to the point of preparation of a tentative map will not have such a map in a condition to be approved or recorded and the local agency will not be in a position to give a developer any statement of the amount of fees sought to be charged to the project by the agency.

The focus of section 66020 upon a particular, in-progress development has been noted in some of the cases interpreting and applying this statute. In *Ponderosa Homes, Inc.* v. *City of San Ramon* (1994) 23 Cal.App.4th 1761, 1770 [29 Cal.Rptr.2d 26], the court observed that "[d]ifferent agencies and localities may impose fees at different times, and not always at the same time as the development is approved or conditionally approved. Fees may be imposed—that is, required by authority of government—before or after tentative map approval." Even more to the point, this court in *Trend Homes, Inc.* v. *Central Unified School Dist., supra,* 220 Cal.App.3d at page 111 (hereafter *Trend Homes*), recognized that "one party developing different subdivisions in the same area over a period of time is not precluded from challenging the fees imposed on each particular subdivision. The limitations period begins to run on the date the fee is first imposed or levied on the subdivision at issue."

Turning to section 66022 on the other hand, its point of reference is not a specific "development" or "development project" but instead a local agency "ordinance, resolution, or motion" adopting or modifying a covered fee or charge. Furthermore, section 66022 permits a local agency or an "interested person" to commence an action concerning a fee setting or modifying local agency decision. A local agency is obviously not a developer responsible for the payment of capacity charges and a person "interested" in a local agency fee enactment might well be someone other than a developer with a pending project, such as an owner of bare land in the affected area who has future plans to develop the property or a taxpayer who believes the decision represents an ultra vires governmental act.

The difference in focus between sections 66022 and 66020 is mirrored to some extent by the difference between the two categories of fees described in section 66000, subdivision (b). Under the definition set out in this provision, a "fee" for purposes of the Mitigation Fee Act is both a monetary exaction "established for a broad class of projects by legislation" and a monetary exaction "imposed on a specific project on an ad hoc basis." It seems reasonable to conclude the incorporation into the Mitigation Fee Act of section 66022 pertaining to fee legislation and section 66020 pertaining to

fee imposition was intended to establish time limits and other procedural controls uniquely appropriate to challenges to the two types of fees described in subdivision (b) of section 66000. Though the definition of a "fee" in subdivision (b) of section 66000 does not mention any monetary exaction "imposed on a specific project" because the project falls within a "broad class of projects" covered by a particular piece of fee legislation, we believe such fees are implicitly covered by the Mitigation Fee Act. We cannot ascribe to the Legislature a purpose to withhold from a developer the means to contest the attempted application to a specific project of a fee ordinance if the developer, for example, claims the ordinance does not in fact encompass the particular project or the sum demanded was a result of an arithmetical error in the agency's fee computations. Thus, as we have stated, section 66020 applies to a developer's challenge to an agency's adjudicative decision to impose upon a particular development project a fee adopted by a generally applicable legislative decision.[9]

■ The contrasting language of the two statutes calls up the second relevant principle of statutory construction, which is that we must avoid if possible repeals by implication, give effect and significance to every word and phrase of a statute, and construe every statute in the context of the " ' "entire scheme of law of which it is a part so that the whole may be harmonized and retain effectiveness." ' " (*People* v. *Thomas* (1992) 4 Cal.4th 206, 210 [14 Cal.Rptr.2d 174, 841 P.2d 159]; see also *Garcia* v. *McCutchen, supra,* 16 Cal.4th at pp. 476-477; *Gonzalez* v. *County of Tulare* (1998) 65 Cal.App.4th 777, 786-787 [76 Cal.Rptr.2d 707].) ■ To hold that section 66020 governs a lawsuit challenging a local agency's legislative decision to adopt or modify a capacity charge would effectively nullify at least two expressions of legislative intent manifested in section 66022. First, such a determination would repeal the direction in section 66022 that lawsuits attacking fee setting or modifying ordinances must be filed within 120 days after the effective date of the decision. Thus, a person who commenced development of property in the impacted area more than 120 days after the effective date of the decision, perhaps years later, would nonetheless be allowed to dispute the decision so long as the contestant complied with the conditions in section 66020. (Cf. *San Marcos Water Dist.* v. *San Marcos Unified School Dist.* (1987) 190 Cal.App.3d 1083, 1086 [235 Cal.Rptr. 827] (hereafter *San Marcos Water Dist.*) [action for refund of water "capacity fees," filed more than four years after last payment was made, was barred by predecessor to section 66022].)

---

[9]Because we will find in the unpublished portion of this opinion that the fees sought to be charged against Hill's development were adopted by a City ordinance of general applicability to all described developments in the affected locale, we have no reason to consider whether section 66022 would ever apply to a fee "imposed on a specific project on an ad hoc basis." (§ 66000, subd. (b).)

Second, such a determination would negate the proscription, incorporated into section 66022, against any and all later challenges to a final judgment entered in an action brought under section 66022. Subdivision (b) of section 66022 states that the provisions of chapter 9 (commencing with section 860) of title 10 of part 2 of the Code of Civil Procedure control how a lawsuit within section 66022 is to be "brought" by a local agency or an interested person. ■■■■ ■■■■ The referenced sections of the Code of Civil Procedure establish the procedural rules governing what is commonly known as a "validation action"—a lawsuit filed and prosecuted for the purpose of securing a judgment determining the validity of a particular local governmental decision or act.[10] ■■■ Among these statutes is Code of Civil Procedure section 870, which makes a final judgment in a validation action "forever binding and conclusive, as to all matters therein adjudicated or which at that time could have been adjudicated, against the agency and against all other persons," and a permanent bar to the "institution by any person of any action or proceeding raising any issue as to which the judgment is binding and conclusive."[11] These provisions would be erased if challenges to a local agency's legislative decision enacting or modifying a capacity charge could be raised under section 66020. A developer could obtain a judgment invalidating such a decision notwithstanding the prior entry of a Code of Civil Procedure section 870 judgment, entered in an entirely separate action, upholding the agency's action as a proper exercise of the power vested in the agency.[12]

---

[10] A validation action is a proceeding in rem. (Code Civ. Proc., § 860; *Bernardi v. City Council* (1997) 54 Cal.App.4th 426, 439 [63 Cal.Rptr.2d 347].) The validation statutes require consolidation of all challenges to a particular governmental action and entry of a single judgment. (*Committee for Responsible Planning v. City of Indian Wells* (1990) 225 Cal.App.3d 191, 196 [275 Cal.Rptr. 57].) Any challenges to the validity of the governmental action must be raised in the validation proceeding; the validation judgment is binding on the agency seeking the judgment and on all other parties. (*Id.* at p. 197.)

[11] Other statutes in chapter 9 of title 10 of part 2 of the Code of Civil Procedure relate to service of process (Code Civ. Proc., § 861), the content of the summons (Code Civ. Proc., § 861.1), and setting for trial (Code Civ. Proc., § 867).

[12] The authorization in section 66022, subdivision (b), that an action may be filed by an "interested person" is repeated in Code of Civil Procedure section 863, which sanctions the filing of a validation action by any "interested person," within "the time and in the court specified in section 860," if the public agency fails to do so. Code of Civil Procedure section 860 provides that a public agency may, within 60 days after the decision or act, "bring an action in the superior court of the county in which the principal office of the public agency is located to determine the validity of such" decision or act.

The words "interested person" in Code of Civil Procedure section 863 have been broadly interpreted to include, for example, an unincorporated association composed of "residents, taxpayers, landowners and/or registered voters" who oppose annexations. (*Citizens Against Forced Annexation v. County of Santa Clara* (1984) 153 Cal.App.3d 89, 91, 98 [200 Cal.Rptr. 166] [action challenging validity of certain annexations of land by a city]; see *Voss v. Superior Court* (1996) 46 Cal.App.4th 900, 922 [54 Cal.Rptr.2d 225] [a citizen interested in

## C.

We think our construction of the two statutes in issue serves to promote the underlying purposes of both. ▮ Section 66022 "represents a legislative recognition that the planning requirements of financially constrained local agencies in post-Proposition 13 California necessitate a relatively short statute of limitations so that local agencies will be promptly informed of any challenges to their ability to collect fees and spend the revenues thereby generated." (*San Marcos Water Dist., supra,* 190 Cal.App.3d at p. 1085 [addressing section 54995, the predecessor to section 66022].) ▮ Section 66020, for its part, permits a developer to contest the validity of a fee imposition against a particular development without having to halt work on the project. (*Shapell Industries, Inc.* v. *Governing Board* (1991) 1 Cal.App.4th 218, 241 [1 Cal.Rptr.2d 818]; *Trend Homes, supra,* 220 Cal.App.3d at p. 111.) By virtue of our holding, for example, a person who intends to develop property in the impacted locale or who is in the process of doing so when a capacity charge ordinance of general application is enacted will be required to bring his or her challenge to the ordinance within the 120-day time limit of section 66022. Moreover, whether or not the person files such a lawsuit, he or she will still have the times provided for in section 66020 to protest and then attack in court the propriety of the application of the charge to the person's development after it is under way, should the enabling legislation be validated by the passage of time or by the entry of a judgment under Code of Civil Procedure section 870. (See *Trend Homes, supra,* 220 Cal.App.3d at p. 111.)[13]

Nothing in our opinion is intended to authorize a developer that brings a section 66022 action to proceed with work on a specific project without first paying the subject fees. In *San Marcos Water Dist., supra,* 190 Cal.App.3d 1083, the plaintiff sued for a refund of water capacity fees under the predecessor (§ 54995) to section 66022. The court found that the plaintiff's action was barred by the 120-day limitations period of the statute, the fees having been paid between 4 and 12 years before the action was brought. (*San Marcos Water Dist., supra,* 190 Cal.App.3d at pp. 1085-1086.) The court noted that the plaintiff could have "avoided any question" about its disagreement with the fees by paying them under protest. (*Id.* at p. 1086; see also *Trend Homes, supra,* 220 Cal.App.3d at pp. 109-110 [action subject to

---

having the laws executed and the duty in question enforced may bring an action under Code of Civil Procedure section 1085].)

[13]The existence of a validated capacity charge ordinance is a factor which undoubtedly will be taken into account by a person who contemplates acquiring, after the validation date, an interest in property in the impacted area for development purposes.

section 66022 for refund of fees previously paid].)[14] Thus, if a developer brings an action subject to section 66022, it must pay the fees, if and when they become due during the pendency of the lawsuit, under a *San Marcos Water Dist.* nonstatutory protest; if the developer also wishes to challenge the adjudicatory decision to apply the fees to the development, it must comply with section 66020.[15]

## D.

We acknowledge that subdivision (f) of section 66020 contains language seemingly inconsistent with the conclusions we have reached. (See *Western/ California, Ltd.* v. *Dry Creek Joint Elementary School Dist.* (1996) 50 Cal.App.4th 1461, 1475 [58 Cal.Rptr.2d 220].) Subdivision (f) of section 66020 does two things. First, in subdivision (f)(1), it directs the trial court to order the local agency to "refund [to the plaintiff] the unlawful portion of the payment" (with interest) or "return [to the plaintiff] the unlawful portion of the exaction" if the court "grants a judgment to [the] plaintiff *invalidating, as enacted, all or a portion of an ordinance or resolution enacting a fee . . . or other exaction.*" (§ 66020, subd. (f)(1), italics added.) Second, in subdivision (f)(2), it directs the trial court to "also" return the "portion of the payment or exaction invalidated" to "any other person" who filed a timely protest and "tendered the payment" or "provided for or satisfied the exaction" if an "action is filed within 120 days of the date at which an ordinance or resolution to establish or modify a fee . . . or other exactions to be imposed on a development project takes effect." (§ 66020, subd. (f)(2).)

We do not see either part of subdivision (f) of section 66020 as undermining our construction of the two statutes in issue. The language and apparent purpose of section 66020, subdivision (f)(1) and (2) indicate they were intended to apply to actions, such as those covered by section 66022, which challenge a legislative decision to enact or modify a fee and not to actions which challenge an adjudicative decision imposing a fee upon a particular project.[16] With respect to subdivision (f)(1) of section 66020, the description of the lawsuit in this subpart is comparable to the description of

---

[14]Section 66020, subdivision (f)(1), discloses a legislative intent that payment of disputed fees under a nonstatutory protest is permitted because the subdivision directs the entry of a judgment refunding fees previously paid if the subject agency enactment is thereafter found to be invalid by the courts. (See discussion of subdivision (f)(1) of section 66020, *post.*)

[15]According to Hill, a determination that section 66020 is applicable to actions challenging the validity of a fee ordinance would make the statute inconsistent with certain other provisions of the Government Code, such as section 66007. While this may be so, we find no reason to consider the point.

[16]The Legislature has in the past "misplaced" a statute relating to development fees. (See *Balch Enterprises, Inc.* v. *New Haven Unified School Dist., supra,* 219 Cal.App.3d at pp. 788-789 [Legislature put section 54995, section 66022's predecessor, in chapter 13.5 of part

the lawsuit in section 66022, subdivision (a). In addition, subdivision (f)(1) prescribes a remedy which is a logical adjunct to a section 66022 action but which is not provided for in that statute. If subdivision (f)(1) were applied to actions covered by section 66020, subdivision (d), then it would be substantially duplicative of subdivision (e) of the same statute, which directs the court to order the local agency to "refund [to the plaintiff] the unlawful portion of the payment" (with interest) or "return the unlawful portion of the exaction" if the court "finds in favor of the plaintiff in an action . . . brought" under subdivision (d).

With respect to section 66020, subdivision (f)(2), it permits a person who has timely protested, under section 66020, the imposition of a charge on a particular development to have the benefits of another party's successful lawsuit overturning a legislative decision to enact or modify a fee. The lawsuit must be brought within 120 days of the effective date of the ordinance, the same time limit found in section 66022. We do not think it irrational for the Legislature to provide for a refund to a person who has protested in compliance with section 66020 if the ordinance which authorized the imposition is later declared unlawful, even though such person was not the one who sued under section 66022 to invalidate the ordinance. Subdivision (f)(2) of section 66020 does not release such a beneficiary from filing his or her own independent lawsuit within the 180 days specified in subdivision (d) of section 66020 if he or she wishes to litigate the validity of the imposition in the event the underlying ordinance is upheld.

Whatever the Legislature sought to accomplish by virtue of section 66020, subdivision (f), we cannot attribute to the lawmakers an intention to undo by this provision what they did by section 66022. ■ The express purpose underlying section 66022 is to ensure that the local agency will be in a position to make concrete fiscal plans based upon prompt judicial review of ordinances and resolutions establishing a defined source of funding. (*San Marcos Water Dist., supra,* 190 Cal.App.3d at p. 1085; *Trend Homes, supra,* 220 Cal.App.3d at p. 109.) The Legislature's incorporation of the Code of Civil Procedure sections governing validation actions carries into section 66022 the finality provisions of Code of Civil Procedure section 870. ■ Both the aim behind section 66022 and the conclusive effect of a judgment in an action brought under its auspices would be subverted by permitting a plaintiff to attack, in an action brought under section 66020, the

1 of division 2 of title 5 of the Government Code even though it concerned fees described in section 54992 found in chapter 13].) Chapter 13 of part 1 of division 2 of title 5 of the Government Code at the time also included section 54991, which is the predecessor to section 66013. The Legislature renumbered both sections and placed them in chapters 7 and 9, respectively, of division 1 of title 7 of the Government Code in 1990. (Stats. 1990, ch. 1572, p. 7494 et seq.)

fundamental validity of a local agency's legislative decision to enact or modify a water capacity charge sought to be applied to the plaintiff's development.[17]

E.

We find compelling authority for our holding in the Supreme Court's decision in *Hensler* v. *City of Glendale* (1994) 8 Cal.4th 1 [32 Cal.Rptr.2d 244, 876 P.2d 1043]. At issue in *Hensler* was whether the 90-day limitations period in section 66499.37, a provision of the Subdivision Map Act (§ 66410 et seq.), foreclosed the plaintiff's suit for inverse condemnation arising out of a city ordinance prohibiting construction on certain physical features (ridge lines) within the city. The Supreme Court concluded that section 66499.37 "governs the time within which [the inverse condemnation] action should have been initiated." (8 Cal.4th at p. 26.) Section 66499.37 provides: "Any action or proceeding to attack, review, set aside, void or annul the decision of an advisory agency, appeal board or legislative body concerning a subdivision, or of any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced and service of summons effected within 90 days after the date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations. Any such proceeding shall take precedence over all matters of the calendar of the court except criminal, probate, eminent domain and forcible entry and unlawful detainer proceedings." (See *Hensler* v. *City of Glendale, supra,* 8 Cal.4th at p. 7.)

In its discussion of the issue, the court also referred to section 65009, a provision of the Planning and Zoning Law (§ 65000 et seq.), which, in subdivision (c), read:

" 'Except as provided in subdivision (d), no action or proceeding shall be maintained in any of the following cases by any person unless the action or

---

[17]The several statutes found in chapter 9 of division 1 of title 7 of the Government Code pose a number of thought-provoking questions. For example, to what statute other than section 66022 might section 66020, subdivision (f)(2) apply, if any? Or, if section 66021 permits a party in compliance with section 66020 to bring a suit contesting the validity of a legislative decision adopting a fee other than one covered by section 66022, why does section 66020, subdivision (f)(2) set 120 days from the effective date of the ordinance as the period within which such an action must be filed when the different time limits of section 66020 run from the date of imposition of the fee on a specific development project? The answers must come from a case raising such issues or, perhaps, from the Legislature.

proceeding is commenced and service is made on the legislative body within 120 days after the legislative body's decision:

"... . . . . . . . . . . . . . . . . . . . . . . . . . . . .

" '(2) To attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a zoning ordinance.' " (*Hensler* v. *City of Glendale, supra,* 8 Cal.4th at p. 22, fn. 10.)

Distinguishing the two code sections, the court expressed the view that "[i]f the challenge is to the facial validity of a land-use regulation, the statute of limitations runs from the date the statute becomes effective. Government Code section 65009 establishes a 120-day period of limitation for such actions. By contrast, if the challenge is to the application of the regulation to a specific piece of property, the statute of limitations for initiating a judicial challenge to the administrative action runs from the date of the final adjudicatory administrative decision. Government Code section 66499.37 establishes a 90-day period of limitation for these actions." (*Hensler* v. *City of Glendale, supra,* 8 Cal.4th at p. 22, fns. omitted.)

The parallels between sections 65009 and 66022 and between sections 66499.37 and 66020 are noteworthy. The subject of both section 65009 and section 66022 is an act—the adoption of some form of local legislation. Though section 66022 does not refer expressly to a decision by a "legislative body," as does section 65009, the import of section 66022 is the same, for the promulgation of a law of general application is fundamentally a legislative act. (See *Joint Council of Interns & Residents* v. *Board of Supervisors, supra,* 210 Cal.App.3d at pp. 1210-1211.) Both statutes set 120-day periods of limitation for the filing of a lawsuit. By contrast, the subject of both section 66499.37 and section 66020 is an object—"a subdivision" in the former and "a development" in the latter. Both establish 90-day periods of limitation, though in the former it is for suit and in the latter it is for protest. After the expiration of the respective limitations periods for the filing of suits, both preclude further "action or proceeding" or "any defense of invalidity or unreasonableness of" the agency's decision.

The Supreme Court's focus in *Hensler* on "facial" challenges to an ordinance does not undermine the persuasive value of the opinion. The court in *Hensler* was addressing sections 65009 and 66499.37 in connection with an action for inverse condemnation. In this context, the term "facial" has the status of a word of art descriptive of a contention that the mere enactment of a land use regulation works a compensable taking of the plaintiff's property. (*Hensler* v. *City of Glendale, supra,* 8 Cal.4th at p. 24; see *Twain Harte Associates, Ltd.* v. *County of Tuolumne* (1990) 217 Cal.App.3d 71, 81-82 [265 Cal.Rptr. 737].) Given the breadth of the language of section 65009,

subdivision (c), and the Supreme Court's finding that section 66499.37 concerns *only* adjudicatory decisions which affect a specific piece of property, we believe the court would view section 65009 as governing a claim that a "decision of a legislative body to adopt or amend a zoning ordinance" is invalid because it represented a legislative act in excess of the local agency's constitutional or statutory power.

Further support is found in *Winnaman* v. *Cambria Community Services Dist.* (1989) 208 Cal.App.3d 49 [256 Cal.Rptr. 40] (hereafter *Winnaman*), where the district enacted an ordinance, effective in April 1985, setting water and sewer connection fees at a rate higher than the rate in force under the prior ordinance. (*Id.* at p. 52.) The new rates were made applicable by the new ordinance to " 'any development which has not received all final development permits . . . on the effective date of [the] ordinance.' " (*Ibid.*) The plaintiff applied for and received building permits for its project after the effective date of the new ordinance. In July 1985, the plaintiff filed a petition for a writ of mandate to require the district to provide water and sewer service connections at the earlier, lower fee. The petition did not attack the validity of the ordinance itself but "only raised the question of whether the ordinance applied to [the plaintiff]." (*Id.* at p. 53.) Later, however, in a subsequent petition filed in March 1996, the plaintiff raised issues going to the "validity of the ordinance itself." (*Ibid.*) The Court of Appeal held that the plaintiff's "challenge to the validity of the ordinance" was barred by the limitations provision in the predecessor (§ 54995) to section 66022. (208 Cal.App.3d at p. 53.)

Support is also found in *San Marcos Water Dist., supra,* 190 Cal.App.3d 1083, where the court held that the plaintiff's action for a refund of water capacity fees paid by the plaintiff to a water district between four and twelve years before the plaintiff first disputed the legality of the fees was barred by section 54995, the predecessor to section 66022. (190 Cal.App.3d pp. 1085-1086.) The court made no mention of section 66020 or its predecessors, and specifically disclaimed any attempt to consider "whether some other limitations period applicable to special assessments might also bar the [plaintiff's] claim." (190 Cal.App.3d at p. 1086, fn. 2.)

F.

Several existing opinions deal with related issues. The parties have relied on a number of them to support their respective arguments. (See *Western/California, Ltd.* v. *Dry Creek Joint Elementary School Dist., supra,* 50 Cal.App.4th 1461, 1475; *Ponderosa Homes, Inc.* v. *City of San Ramon, supra,* 23 Cal.App.4th 1761; *California Ranch Homes Development Co.* v.

*San Jacinto Unified School Dist.* (1993) 17 Cal.App.4th 573 [21 Cal.Rptr.2d 557]; *Garrick Development Co.* v. *Hayward Unified School Dist., supra,* 3 Cal.App.4th 320; *Shapell Industries, Inc.* v. *Governing Board, supra,* 1 Cal.App.4th 218; *Trend Homes, supra,* 220 Cal.App.3d 102; *North State Development Co.* v. *Pittsburg Unified School Dist., supra,* 220 Cal.App.3d 1418; *Balch Enterprises* v. *New Haven Unified School Dist., supra,* 219 Cal.App.3d 783; *Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873 [150 Cal.Rptr. 606].)

We find none of these cases dispositive. One did not address either section 66020 or section 66022 (*Timberidge Enterprises, Inc.* v. *City of Santa Rosa, supra,* 86 Cal.App.3d 873 [applying section 66499.37]), and another found that neither the predecessor to section 66020 nor the predecessor to section 66022 applied to the fee in issue (*Balch Enterprises* v. *New Haven Unified School Dist., supra,* 219 Cal.App.3d 783). Many did not mention 66022 or its predecessors. (See *Ponderosa Homes, Inc.* v. *City of San Ramon, supra,* 23 Cal.App.4th 1761; *California Ranch House Development Co.* v. *San Jacinto Unified School Dist., supra,* 17 Cal.App.4th 573; *Garrick Development Co.* v. *Hayward Unified School Dist., supra,* 3 Cal.App.4th 320; *Shapell Industries, Inc.* v. *Governing Board, supra,* 1 Cal.App.4th 218; *Timberidge Enterprises, Inc.* v. *City of Santa Rosa, supra,* 86 Cal.App.3d 873.)

However, a few of these cases, notwithstanding their distinguishing features, might be read to stand for the proposition that section 66020 authorizes a developer to challenge a local agency legislative decision adopting or modifying a water capacity charge. For example, in *North State Development Co.* v. *Pittsburg Unified School Dist., supra,* 220 Cal.App.3d 1418 (hereafter *North State*), the court found a conflict between section 54995, the predecessor to section 66022, and section 66008, the predecessor to section 66020, in an action involving a challenge to school facilities fees imposed under the authority of former section 53080 (now Ed. Code, § 17620).[18] Characterizing former section 54995 as the general statute and former section 66008 as the special statute, the court applied the rule which gives precedence to the latter over the former. (*North State, supra,* 220 Cal.App.3d at p. 1425; see also *Western/California, Ltd.* v. *Dry Creek Joint Elementary School Dist., supra,* 50 Cal.App.4th 1461, 1475.)

To the extent these opinions may be construed as requiring a result at odds with the one we reach here, we decline to follow them. The rule of priority

---

[18]Like current section 66021, section 53080.1 (now Ed. Code, § 17621) provided in relevant part that a person upon whom a school facilities fee is imposed "may protest the *establishment or imposition*" (italics added) of the fee pursuant to the provisions of section 66020. (See *North State, supra,* 220 Cal.App.3d at p. 1425.)

between a general and a special statute applies when the compared laws are irreconcilable. (*Garcia* v. *McCutchen, supra,* 16 Cal.4th at p. 477.) Because we have found a rational basis for harmonizing the two statutes in issue here by giving them mutually exclusive, independent applications, the exclusionary principle does not apply. (*Ibid.*) Moreover, former section 54995 did not contain the limitations now set out in subdivision (c) of section 66022; subdivision (c) was added in 1990. (See Stats. 1982, ch. 289, § 5, pp. 929-930; Stats. 1988, ch. 926, § 2, p. 2952; Stats. 1990, ch. 1572, § 22, pp. 7505-7506.) We would therefore come to a different conclusion today about the identity of the general statute and the special statute were the issue relevant. Section 66020 applies to "any" fee or exaction, but section 66022 currently applies only to certain water supply charges (§ 66013), certain fees for services performed by a local agency (§ 66014), and certain other specified fees (§ 66016). Section 66020 rather than section 66022 thus appears to have become the "general" statute.

### III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is reversed. Appellant is awarded costs on appeal.

Harris, J., and Wiseman, J., concurred.

*See footnote, *ante*, page 977.