[No. A042305. First Dist., Div. One. Mar. 19, 1990.]

BALCH ENTERPRISES, INC., Plaintiff and Respondent, v.
NEW HAVEN UNIFIED SCHOOL DISTRICT et al., Defendants
and Appellants.

COUNSEL

Jon A. Hudak for Defendants and Appellants.

Karen M. Steentofte as Amicus Curiae on behalf of Defendants and Appellants.

Varni, Fraser, Hartwell & Rodgers, Anthony B. Varni and David P. Lanferman for Plaintiff and Respondent.

OPINION

NEWSOM, J.—The New Haven Unified School District and the Board of Education of the New Haven Unified School District (hereafter school district) appeal from a judgment granting Balch Enterprises, Inc. (hereafter Balch), a writ of mandate and awarding attorneys' fees. The writ of mandate orders the school district to vacate a resolution imposing a "school facilities fee" on new commercial and industrial construction within the district and to refund the fees it had imposed on Balch's developments.

The school district embraces the cities of Union City and Hayward. Although Union City had charged school facilities fees on new residential construction for several years, the school district itself lacked authority to do so until legislation enacted in 1986 gave it authority to impose the fees both on new residential and on commercial and industrial construction. In a resolution adopted on January 20, 1987, the school district imposed a school facilities fee of $1.50 per square foot on new residential construction and $.25 per square foot on new commercial and industrial construction. Balch was then engaged in preliminary site improvement work for construction of a warehouse in Hayward, California. On August 3, 1987, it paid a school facilities fee of $9,322 under protest and later brought this action.

■ We consider first the perplexing question of the applicable statute of limitation. The trial court ruled that the case is subject to Government Code section 65913.5 (now § 66008) which establishes a 180-day period of limitation commencing from the date the fee is paid under protest; appellant argues that the action is instead governed by Government Code section 54995 which provides that a certain action attacking an ordinance or resolution must be brought within 120 days of the effective date of the measure. Since the present action was filed on November 6, 1987, and attacks a resolution effective on January 20, 1987, it would be barred by this statute. Rejecting both interpretations, we conclude that the action is governed by the catch-all statute of limitation: Code of Civil Procedure section 343,

which establishes a four-year statute of limitations for "relief not hereinbefore provided for . . . ."

The contested fee was imposed under the authority of Government Code sections 53080 and 65995. Enacted in 1986, the two statutes authorize school districts to require their local city and county governments to impose school facilities fees as a condition to granting a building permit. (Stats. 1986, ch. 887.) Earlier legislation had merely allowed school districts to transmit findings to the city council or board of supervisors that could provide a legal basis for the local government itself to impose the fees. (Gov. Code, § 4.7, tit. 7, div. 1, commencing with Gov. Code, § 65970 et seq.) During the 1980's, the power of local agencies generally to impose development fees was the subject of a rapidly evolving body of legislation, originating in former Government Code section 53077 and later codified in chapter 5, title 7, division 1, of the Government Code, commencing with Government Code section 66000. While Government Code sections 53080 and 65995 contain no references to chapter 5, of title 7, division 1, they refer to chapter 4.7 and to certain closely linked statutes, Government Code 65928 and chapter 4.9, title 7, division 1 (commencing with § 65995).

Searching for the applicable statute of limitations, the trial court looked quite plausibly to chapter 5, of title 7, division 1, of the Government Code and ruled that the case was governed by the 180-day limitation in Government Code section 66008 (formerly § 65913.5). The ruling, however, overlooked the fact that, until the 1989 enactment of Government Code section 53080.1, subdivision (d), section 66008 (formerly § 65913.5) applied to fees "imposed on a *residential housing development* by a local agency . . . ." (Italics added.) Since the case at bar concerns a commercial development, it falls outside the scope of the statute.

The school district argues strenuously that the plain language of Government Code section 54995 in fact places a 120-day limitation on bringing actions to contest the fee. The section provides: "Any judicial action or proceeding to attack, review, set aside, void, or annul an ordinance, resolution, or motion levying a new fee or service charge, or modifying or amending an existing fee or service charge, duly enacted by a local agency, as defined in Section 54994, shall be commenced with 120 days of the effective date of the ordinance, resolution, or motion . . . ."

Balch counters that section 54995, as codified in chapter 13.5, title 5, division 2, of the Government Code, applies only to actions brought to contest fees under the preceding chapter 13 of that title and division of the Government Code. Chapter 13 serves to limit the power of local agencies to

increase general revenues by exacting fees for sewer connections, water connections, and various permits relating to building and land use regulations. The procedural provision in the chapter, section 54992, refers to "a new fee or service charge," the identical language found in section 54995. If chapter 13 and chapter 13.5 are read as a unit, section 54995 would indeed appear to refer back to fees imposed under chapter 13. Appellant points out that the section 54995 was enacted in a brief statute that dealt only with amendments to chapter 13 and establishment of the new chapter 13.5, thus suggesting that the Legislature saw a link between the two chapters. (Stats. 1982, ch. 289, § 5.)

Balch's argument leaves two features of the legislative draftsmenship unexplained. The legislation enacting Government Code section 54995 specifically placed it in a newly created chapter. (Stats. 1982, ch. 289.) If the section was intended to relate only to chapter 13, why did the Legislature not place it in that chapter? Secondly, the only cross-reference to chapter 13 found in section 54995 is to the all-inclusive definition of "local agency" in section 54994. If the Legislature intended to restrict the section to actions challenging those categories of fees embraced in chapter 13, why did it not insert a more specific cross-reference?

But despite these anomalies, Balch's reading of Government Code section 54995 is reflected both in the legislative digest and subsequent legislation. The summary digest of the legislative counsel to statutes of the 1981-1982 regular section describes the legislation enacting section 54995 as follows: "This bill would require that any judicial proceeding attacking the validity of *such ordinance or resolution,* including ordinances or resolutions which provide for an automatic adjustment in a fee or service charge, be conducted in accordance with specified provisions and be commenced within 120 days of the effective date of the ordinance or resolution . . . ." (Italics added.) In this context, the phrase "such ordinance or resolution" refers unambiguously to ordinances and resolutions enacted under the authority of chapter 13, revealing that the legislative counsel indeed read the two chapters as a single unit.

The legislation enacting Government Code section 66008 (formerly § 65913.5) discloses the same legislative understanding. Subdivision (d) creates a procedure for parties to sue for a refund of development fees imposed by local agencies on residential housing developments. The pertinent language provides: "Any party who files a protest pursuant to subdivision (a) may file an action to attack, review, set aside, void, or annul the imposition of the fees, dedications, reservations, or other exactions imposed on a residential housing development by a local agency within 180 days after the date of the imposition." Such refund suits will inevitably involve

issues of the validity of the authorizing ordinances—the broad phrase "to attack, review, set aside, void or annul" creates no apparent restriction on the court's power to adjudicate the legality of the fees. The statute was enacted in 1984, two years after enactment of Government Code section 54995. Nevertheless, it contains no references to section 54995 or related statutes. If the Legislature understood section 54995 as applying to suits challenging development fees imposed by local agencies, it is questionable that it would have seen a need to enact section 66008 (formerly § 65913.5); in any event, the Legislature surely would have attempted to harmonize section 66008 (formerly § 65913.5) with section 54995. We are forced to infer that, like the legislative counsel, the Legislature read section 54995 as applying narrowly to suits challenging fees imposed by chapter 13, title 5, division 2.

Furthermore, appellant's reading of Government section 54995 would give it an implausible scope. If the statute is construed to extend to suits contesting development fees imposed under Government Code sections 53080 and 65995, the logic of this interpretation should also apply to suits challenging the entire constellation of fees and charges imposed by local agencies under California law. Nothing in the legislation clearly announces such a sweeping purpose, and the apparent purpose of the statute would not appear to be served in the case of many challenges to fees lying outside the scope of chapter 13, title 5, division 2. It is significant that, if a suit falls within the provisions of Government section 54995, it will be governed by Code of Civil Procedure, section 860 et seq., by virtue of Government Code section 54996. There is no apparent reason why this procedure, originally devised for suits to validate bond issues, should apply to each and every challenge to a local fee.

Our analysis leads to the conclusion that there is in fact no statute of limitation applying specifically to the present suit. It is therefore governed by Code of Civil Procedure section 343. (3 Witkin, Cal. Procedure (3d ed. 1985) § 474, p. 505.)

■ This conclusion also disposes of appellant's contentions that the suit fails to comply with the procedures of Government Code section 66008 (formerly § 65913.5) or, alternatively, the procedures of Code of Civil Procedure section 860 et seq., which are mandated for suits under Government Code section 53080. If neither of these specific statutory schemes apply, the case will be subject instead to the general principles governing mandamus actions. (See *Sutco Construction Co.* v. *Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1226-1227 [256 Cal.Rptr. 671].)

Balch maintains that the case is governed by the procedural standards of administrative mandamus under Code of Civil Procedure section 1094.5

and, arguing from this premise, contends that the findings of the school board are not supported by substantial evidence. Administrative mandamus, however, is available only to review adjudicatory decisions of government agencies. (Cal. Administrative Mandamus (Cont.Ed.Bar 1989) § 3.2, p. 70.) Since the school board's decision to impose the development fees applied generally to all future commercial and industrial development within its jurisdiction, the decision had a legislative rather than adjudicatory character. ■ "Generally speaking, a legislative action is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual application of such a rule to a specific set of existing facts." (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29].) ■ Moreover, section 1094.5 is restricted to agency decisions made in proceedings involving (a) a hearing, (b) presentation of evidence, and (c) findings of fact. The statute authorizing the school board's action, Government Code section 65995, subdivision (b)(2), required certain findings (until amended in 1989) but contained no language suggesting the requirement of a hearing or the presentation of evidence. "Although the statutory obligation to make a 'finding' is a characteristic shared with adjudicatory proceedings, it does not stamp the function with an adjudicative character." (*Joint Council of Interns & Residents* v. *Board of Supervisors* (1989) 210 Cal.App.3d 1202, 1212 [258 Cal.Rptr. 762].)

As an action challenging a quasi-legislative action, the case is instead one of ordinary mandamus under Code of Civil Procedure section 1085 and is governed by more limited standards of review. (Cal. Administrative Mandamus, *supra*, § 3.12, pp. 82-83.) ■ A long line of cases have held: "Unlike the broad scope of review provided in administrative mandamus proceedings, review by ordinary mandamus is confined to an examination of the agency proceedings to determine whether the action taken is arbitrary, capricious or entirely lacking in evidentiary support, or whether it failed to conform to procedures required by law." (*Stauffer Chemical Co.* v. *Air Resources Board* (1982) 128 Cal.App.3d 789, 794 [180 Cal.Rptr. 550]; *Sierra Club* v. *City of Hayward* (1981) 28 Cal.3d 840, 848-849 [171 Cal.Rptr. 619, 623 P.2d 180]; *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 34, fn. 2; *City of Carmel-by-the-Sea* v. *Board of Supervisors* (1986) 183 Cal.App.3d 229, 238-239 [227 Cal.Rptr. 899]; *Buena Vista Gardens Apartments Assn.* v. *City of San Diego Planning Dept.* (1985) 175 Cal.App.3d 289, 298 [220 Cal.Rptr. 732].) "The limited scope of review of quasi-legislative administrative action is grounded upon the doctrine of separation of powers which (1) sanctions legislative delegation of authority to an appropriate administrative agency and (2) acknowledges the presumed expertise of the agency." (*Stauffer Chemical Co.* v. *Air Resources*

*Board, supra*, 128 Cal.App.3d 789, 795; *City of Chula Vista* v. *Superior Court* (1982) 133 Cal.App.3d 472, 485 [183 Cal.Rptr. 909].)

■ But as we have noted, Government Code section 65995 requires school districts to make certain findings as a precondition to imposing development fees. How should the standard of review under Code of Civil Procedure section 1085 be applied to such findings? The issue is not uncommon; many statutes or municipal charters require findings of this sort. In terms of the traditional standard of review, the task of the trial court is to determine if the findings were arbitrary or capricious. (See *Walker* v. *County of Los Angeles* (1961) 55 Cal. 2d 626, 636 [12 Cal.Rptr. 671, 361 P.2d 247]; *Heist* v. *County of Colusa* (1984) 163 Cal.App.3d 841, 848 [213 Cal.Rptr. 278]; *Anderson* v. *Board of Supervisors* (1964) 229 Cal.App.2d 796, 798 [40 Cal.Rptr. 541].) We see no way, however, that this determination can be distinguished from application of the substantial evidence rule as applied in administrative mandamus actions—in either case the question is whether there was a reasonable basis for the decision. (See *Russ Bldg. Partnership* v. *City and County of San Francisco* (1987) 199 Cal.App.3d 1496, 1511 [246 Cal.Rptr. 21].) In viewing such findings of quasi-legislative agencies, some courts have in fact inquired into the existence of substantial evidence in support of the findings. (*Joint Council of Interns & Residents* v. *Board of Supervisors, supra*, 210 Cal.App.3d 1202, 1214; *City of Santa Cruz* v. *Local Agency Formation Com.* (1978) 76 Cal.App.3d 381, 393 [142 Cal.Rptr. 873].) Nevertheless, precedents drawn from administrative mandamus proceedings should probably still be applied with caution to the review of findings in a quasi-legislative context. Procedural or evidentiary requirements drawn from analogy to judicial proceedings would appear peculiarly inappropriate here. (*Stauffer Chemical Co.* v. *Air Resources Board, supra*, 128 Cal.App.3d 789.)

■ We turn now to the legality of the development fee. Government Code section 65995, subdivision (b)(2) provides: "No fee . . . may be levied by any school district governing board upon any commercial or industrial development unless and until the governing board has first made the finding that . . . the amount of fees to be paid . . . shall bear a reasonable relationship and be limited to the needs of the community for elementary or high school facilities and shall be reasonably related and limited to the need for schools caused by the development." The language is taken directly from Government Code section 65974, subdivision (a)(4), authorizing city and county governments to impose development fees to support school facilities. In both statutes, the concept of a "reasonable relationship" evidently refers to the constitutional standard established in *Associated Home Builders etc.,*

*Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633, 640 (app. dism. (1971) 404 U.S. 878 [30 L.Ed.2d 159, 92 S.Ct. 202]).

The statute requires two findings with respect to the amount of the development fee: first, that it is reasonably related "to the needs of the community" and, secondly, that it is reasonably related to "the need for schools caused by the development." In enacting the present development fees, the board of education incorporated by reference a memorandum and report dated December 12, 1986, from the district superintendent and adopted "as findings made by the board, the findings contained in the attached December 12, 1986 memorandum and report, including but not limited to the findings on development projects, the resulting facility needs, the cost thereof, and sources of revenue . . . ." As a further finding, the ordinance recited in the words of the statute "that the amount of fees to be paid bears a reasonable relationship and is limited to the needs of the community for elementary or high school facilities and is reasonably related and limited to the need for schools caused by the development." ▪ Such a resolution should not be held up as a model, but in reviewing quasi-legislative actions this court cannot insist on any particular form of findings and must accept staff studies as a permissible basis for agency decisions. (*Browning-Ferris Industries* v. *City Council* (1986) 181 Cal.App.3d 852, 866 [226 Cal.Rptr. 575].) ▪ We will inquire whether the memorandum and report satisfy the statutory requirements.

The staff study focused principally on the justification for fees on residential development and presented a very strong case on this point. The population of the school district had grown 23 percent in the previous 10 years. Eleven district schools experienced enrollment "exceeding the schools' ability to accommodate students in the existing school program." Existing capacity, moreover, included 13 movable trailers subject to 3-year leases. After discussing the estimated cost per student to build new permanent facilities, the report estimated that each additional residential unit would on the average impose on the district a need for new school construction and land acquisition costing $9,175. The district expected that the residential development fee would produce revenues "based on 1500 to 1800 square [feet] per residence. Utilizing the higher figure of 1800 square feet, the new fee will only generate $2,700 per residence to meet facility needs which are in excess of $9,000 per residence."

The report was not able to support the need for commercial and industrial development fee with a comparable analysis, but insisted instead that relevant data was not yet available. The brief section on commercial and industrial development opens with the statement: "Although in-depth stud-

ies have not been done on the impact of commercial and industrial development, several assumptions may be made as follows: . . ." The report goes on to observe that, "[a]s commercial development takes place, the overall population in the area of that development will increase." It argues weakly that school facilities will benefit commercial development—an irrelevant factor under Government Code section 65995—and then addresses in modest detail the consideration that the school district will be obliged to accept more nonresident students whose parents work in the district.

Despite the self-confessed inadequacy of the report, it does raise the difficulty of making the statutory findings. The tendency of commercial and industrial development to increase school enrollment will vary widely depending on such factors as labor intensity, work force composition, labor recruitment area, and local multiplier effects. Since the fee is imposed as a condition for granting a building permit, these factors must somehow be related to square footage—at best an indirect measure of probable effect of the development on school enrollment. Moreover, the fee must be considered in conjunction with the residential development fee. The need for the fee will depend in part on the level of revenues generated by the residential development fee. Accepting the report's assertion that no "in-depth studies" are available "on the impact of commercial and industrial development," we would be demanding the impossible by insisting on rigorously supported findings.

But the very sketchy record here still falls somewhat short of providing a reasonable basis for a finding that the amount of the fee is reasonably related to community needs. It may be relevant that the district accepts nonresident students whose parents work in the district, but the report says only that the number of these students is "substantial" and gives statistics on the total number of nonresident students. Similarly the inadequacy of the revenues generated by the residential development fee does tend to support persuasively the need for a fee on commercial and industrial development. Residential development would have to be accompanied by a rather extraordinary amount of commercial and industrial development for the combined fees to produce revenues meeting community needs. But the record provides no data from which one might infer the volume of commercial and industrial development.

A more serious defect concerns the second finding required by Government Code section 65995, i.e., that the amount of the fee is reasonably related "to the need for schools caused by the development." Appellant makes a persuasive case for liberal interpretation of this requirement. As the phrase "reasonably related" refers to the constitutional standard of *Associ-*

*ated Home Builders etc., Inc.* v. *City of Walnut Creek, supra,* 4 Cal.3d 633 (app. dism. 404 U.S. 878 [30 L.Ed.2d 159, 92 S.Ct. 202]) and its progeny, it should be construed to demand no more than is constitutionally required. "[T]here need be only an indirect relationship between an exaction and a need to which the project contributes." (*Grupe* v. *California Coastal Com.* (1985) 166 Cal.App.3d 148, 164 [212 Cal.Rptr. 578].) "It is enough that the project 'contributes, at least in an incidental manner' to the need for a particular extraction [*sic*]." (*Whaler's Village Club* v. *California Coastal Com.* (1985) 173 Cal.App.3d 240, 260-261, cert. den. 476 U.S. 1111 [90 L.Ed.2d 648, 106 S.Ct. 1962].) But under any interpretation, the plain language of the statute requires a finding relating in some manner to the particular development paying the fee. The record here contains no more than a recitation of the statutory language in the ordinance imposing the fee. It lacks any finding, or evidence in support of a finding, relating to Balch's development or the category of development to which it belongs.

While our analysis leads us to affirm the judgment, it calls into question the award of attorneys' fees under Code of Civil Procedure section 1021.5. The section provides in part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons . . . ."

The record reveals no more than a procedural defect. The district imposed the fee on the strength of a staff study showing a manifest need for new revenues for school construction and indicating that a fee on residential development alone would fall far short of community needs. The authority of Government Code sections 53080 and 65995 to impose fees on commercial and industrial developments is designed precisely for such circumstances. We are obliged to affirm the order invalidating the fee only because we can find nothing in the record that can be reasonably construed to support the findings required by the statute. While the staff study did address the question, it offered little of substance apart from observing the difficulty of estimating the impact of commercial and industrial development on school enrollment. However well founded, this court cannot accept such a plea of difficulty as compliance with the statutory requirements.

Respondent argues that an action may serve to vindicate " 'an important right affecting the public interest' " even if it is decided on a technical statutory ground. (*City of Sacramento* v. *Drew* (1989) 207 Cal.App.3d 1287, 1303 [255 Cal.Rptr. 704].) The petition for writ of man-

date alleges violation of a series of significant constitutional and statutory provisions, including the Federal Civil Rights Act of 1871, the equal protection clause of the California Constitution, the due process clause of the United States and California Constitutions, and article XIII A, section 4, of the California Constitution. The trial court did not reach these issues, and they are not presented in the district's assignments of error. But we have found no support in the record for the trial court's finding that the district acted arbitrarily in imposing the school facilities fees. Since Balch has failed to show arbitrary action, these other claims plainly have no merit.[1]

The judgment is affirmed and the order awarding attorney's fees is reversed. Each party to bear its own costs.

Racanelli, P. J., and Stein, J., concurred.

A petition for a rehearing was denied April 17, 1990, and appellants' petition for review by the Supreme Court was denied June 21, 1990.

---

[1] The order awarding attorneys' fees also finds that Balch is entitled to fees under the Federal Civil Rights Act. (42 U.S.C. § 1988.) Since the statement of decision contains no finding of violation of the Federal Civil Rights Act, we see no basis for imposing the fees under this authority.