[No. B171583. Second Dist., Div. Seven. Mar. 7, 2005.]

CONSUMER CAUSE, INC., Plaintiff, v.
MRS. GOOCH'S NATURAL FOOD MARKETS, INC., et al., Defendants and Respondents;
NICHOLAS GIAMPIETRO, Movant and Appellant.

388

390

## COUNSEL

Kendrick & Nutley, Garrett Kendrick and C. Benjamin Nutley for Movant and Appellant.

Chassman, Yang & Seelig, Mark B. Chassman and Rhonda E. Kaley for Defendant and Respondent Mrs. Gooch's Natural Food Markets, Inc.

Kendrick, Jackson & Kearl, John J. Kendrick, Jr., and Jane Grilliot Kearl for Defendant and Respondent Old Durham, Inc.

## OPINION

**PERLUSS, P. J.—** ▮ Is an unnamed member of a putative class who successfully objects to class certification and approval of a proposed class-wide settlement agreement entitled to an award of attorney fees under either Code of Civil Procedure section 1021.5,[1] which codifies the private attorney general doctrine articulated in *Serrano v. Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*),[2] or general equitable principles? As to the first part of the question, because the objector is not the functional equivalent of a private attorney general pursuing an action to enforce an important public right, he or she is not entitled to fees under section 1021.5.

---

[1] Statutory citations are to the Code of Civil Procedure unless otherwise indicated.

[2] The landmark *Serrano* litigation that began with the 1968 equal protection challenge to the financing of public schools and culminated in 1977 with the Supreme Court's application of the private attorney general doctrine to award attorney fees in a class action lawsuit is commonly referred to as *Serrano I* (*Serrano v. Priest* (1971) 5 Cal.3d 584 [96 Cal.Rptr. 601, 487 P.2d 1241]), *Serrano II* (*Serrano v. Priest* (1976) 18 Cal.3d 728 [135 Cal.Rptr. 345, 557 P.2d 929]) and *Serrano III* (*Serrano III, supra*, 20 Cal.3d 25). (See *Serrano v. Unruh* (1982) 32 Cal.3d 621, 624, fn. 2 [186 Cal.Rptr. 754, 652 P.2d 985].) We employ that convention and refer to the 1977 attorney fees case as *Serrano III*.

■ As to the second part, an objector who persuades the court not to approve a settlement may be entitled to attorney fees under the equitable common fund or substantial benefit doctrines, provided the objector subsequently demonstrates he or she has actually benefited the class (that is, the ultimate class recovery exceeded that which would have been achieved in the absence of the objector's efforts). An objector who simply defeats class certification, however, even if he or she thereby confers some concrete benefit on absent members of the putative class, cannot be awarded attorney fees under equitable principles because there is no one before the court from whom such fees can properly be recovered.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Proposition 65 Lawsuit on Behalf of the General Public

On June 21, 2001 Consumer Cause, Inc. filed this lawsuit on behalf of itself and the general public against Whole Foods Market California, Inc., the fictitious business name of Mrs. Gooch's Natural Food Markets, Inc. (Whole Foods), alleging violations of the Safe Drinking Water and Toxic Enforcement Act of 1986 (Health & Saf. Code, § 25249.5 et seq.), commonly known as Proposition 65. Consumer Cause alleged that Whole Foods had violated Proposition 65 by selling firewood and certain progesterone creams without the clear consumer warning labels that must be displayed on products that contain detectable amounts of chemicals known to cause cancer or birth defects.[3] The complaint, filed pursuant to California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.), sought an injunction, restitution and attorney fees.[4] Whole Foods denied all allegations of liability and filed a cross-complaint for equitable contribution, indemnity and declaratory relief against Old Durham Wood, Inc. and Kokoro, LLC, the manufacturers of the products at issue.

### 2. The Proposed Classwide Settlement

After a successful mediation Whole Foods, Old Durham, Kokoro and Consumer Cause agreed to settle the lawsuit. Consumer Cause would seek

---

[3] Health and Safety Code section 25249.6 provides: "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10."

[4] Consumer Cause did not allege it had actually purchased the products at issue or had otherwise been exposed to them. Because Consumer Cause's right to initiate the lawsuit is not at issue on appeal, we need not address the November 2004 amendments to the requirements for standing to sue under the unfair competition law (see Prop. 64, § 3, as approved by the voters, Gen. Elec. (Nov. 2, 2004, eff. Nov. 3, 2004)), or determine whether those amendments are retroactive.

leave to amend its complaint to allege it was pursuing claims on behalf of all persons similarly situated, in addition to being brought by Consumer Cause in a representative capacity on behalf of the general public. Whole Foods and Old Durham acknowledged they had made adjustments to the marketing and display of products to satisfy Consumer Cause. Kokoro was recognized as exempt from the requirements of Proposition 65, and Common Cause agreed that Whole Foods and Old Durham were currently in compliance with all Health and Safety Code requirements. Counsel for Consumer Cause was to be paid $15,500 in attorney fees. In return, Consumer Cause and all class members who did not opt-out of the settlement would generally release, in the "broadest possible" terms, all claims against Whole Foods, Old Durham and Kokoro for Health and Safety Code violations.

Pursuant to the terms of the proposed settlement, Consumer Cause requested and was provisionally granted leave to file a third amended complaint, this time as a putative class action, identifying the class as the general public and naming Whole Foods, Old Durham and Kokoro as direct defendants. Like its predecessor, the proposed third amended complaint sought injunctive relief and attorney fees but no damages or restitution. Thereafter, the parties filed a stipulated joint motion seeking preliminary approval of the settlement and certification of the class for purposes of settlement.

### 3. Preliminary Approval of the Class Action

At the hearing for preliminary approval for class certification and settlement, the trial court expressed serious reservations about the breadth of the proposed class and the fairness of the settlement. Nonetheless, based on supplemental briefing by Whole Foods, the court granted preliminary approval of a class identified as "all members of the general public within the State of California, including consumers who between June 1, 1997 and the present, through acquisition, purchase, storage consumption or other reasonable foreseeable use of consumer products may have been exposed to products of Defendant Whole Foods, . . . Old Durham . . . Kokoro or their representative manufacturers, suppliers, or distributors, known to the State of California to cause cancer or reproductive harm." The court ordered publication of notice of the proposed settlement to putative class members and scheduled a hearing to consider both the fairness of the settlement and final approval of the class action.

### 4. Objections to Class Certification and the Proposed Settlement

Nicholas Giampietro, an unnamed member of the putative class, filed objections to class certification and proposed settlement on behalf of himself and all absent class members. Giampietro, through his experienced class action counsel, argued that final class certification should be denied because

the putative class was overly broad; Consumer Cause, which had not been directly damaged as a result of the unlawful conduct, was not an adequate class representative; and notice to absent class members did not satisfy minimum due process standards. In addition, because Consumer Cause's complaint sought only injunctive relief and attorney fees, Giampietro asserted the identified class did not substantially benefit from use of the class action procedure and it was therefore more appropriate for the action to proceed as an individual action on behalf of the public.

Giampietro also argued the settlement was unfair and the release "vastly overbroad." Although the complaint was rooted in a violation of Proposition 65, the release, self-described as having been "made as the broadest possible release," covered any and all claims against the defendants for unfair business practices under Business and Professions Code section 17200. In addition, Giampietro presented evidence Whole Foods and Old Durham were still not in compliance with Proposition 65 (they had not posted the requisite warnings).

### 5. *Denial of Class Certification and Final Approval of the Settlement*

At the hearing on the fairness of the settlement, the trial court expressly found Giampietro's "focused" objections and argument persuasive and, relying on Giampietro's stated objections as the bases for its ruling, denied the motion for class certification and final settlement approval.

### 6. *Consumer Cause's Dismissal of the Action*

Following rejection of the proposed settlement, Whole Foods filed a motion for summary judgment directed to the second amended complaint, arguing it was entitled to judgment as a matter of law because it had not been served with notice, as required by the governing regulations implementing Proposition 65,[5] and that in the absence of such notice Consumer Cause could not prove Whole Foods knowingly or intentionally violated either Health and Safety Code section 25249.6 or Business and Professions Code section 17200. Before the hearing on the motion, Consumer Cause filed a request for dismissal of the entire action without prejudice. Dismissal was entered on March 5, 2003.

---

[5] California Code of Regulations, title 22, section 12903, subdivision (b)(2)(A)(2), requires any person commencing an action in the public interest to enforce Proposition 65 to serve a notice identifying the alleged violator. Although the complaint alleged notice had been properly served on Whole Foods, Whole Foods presented evidence in its motion that the wrong entity had been served.

### 7. *Giampietro's Motion for Attorney Fees and Costs*

On April 29, 2003, Giampietro filed a motion for an award of attorney fees and costs. Giampietro asserted that, by providing an "adversarial context" to the court's review of the proposed class action and settlement and persuading the court to deny class certification and final approval of the settlement, he had vindicated important rights for the benefit of the provisionally certified class, entitling him to attorney fees under section 1021.5[6] and general equitable principles. The trial court denied the motion, explaining it had no authority to award attorney fees under section 1021.5 because Giampietro was not a "party" in the action, and there was no basis for a fee award under equitable principles. Giampietro's subsequent motion to intervene in the action was denied.

Giampietro filed a timely appeal from both the order denying his motion for attorney fees and the order denying his motion to intervene for purposes of establishing his right to attorney fees.

### CONTENTIONS

Giampietro contends the court erred in concluding it had no authority to award attorney fees under either the private attorney general doctrine codified in section 1021.5 or the equitable "substantial benefit" and "adversarial context" doctrines.

### DISCUSSION

### 1. *Giampietro Has Standing to Appeal*

At the threshold we reject Whole Foods' contention Giampietro lacks standing to appeal the court's order denying his motion for attorney fees because he was not a named party in Consumer Cause's lawsuit. A class member who appears at a fairness hearing and objects to a settlement affecting that class member has standing to appeal an adverse decision notwithstanding the fact that the member did not formally intervene in the action. (*Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1128–1132 [269 Cal.Rptr. 844]; *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.* (1975) 48

---

[6] Section 1021.5 provides in part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

Cal.App.3d 134, 139 [121 Cal.Rptr. 637] [member of affected class whose objections to settlement were overruled is aggrieved party with standing to appeal]; *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 253 [110 Cal.Rptr.2d 145] [in "context of a class settlement, objecting is the procedural equivalent of intervening"]; see also *Devlin v. Scardelletti* (2002) 536 U.S. 1, 14 [153 L.Ed.2d 271, 22 S.Ct. 2005] [under federal law unnamed class members who object in timely manner to approval of class action settlement at fairness hearing have standing to appeal without first intervening].)

Whole Foods asserts that, because Giampietro's objections to class certification and settlement were effectively sustained, he is not "aggrieved" by the trial court's order. (See *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736–737 [97 Cal.Rptr. 385, 488 P.2d 953]˙ [only an aggrieved party has standing to appeal]; *Eggert v. Pac. States S. & L. Co.* (1942) 20 Cal.2d 199, 200–201 [124 P.2d 815]; see also § 902 ["Any party aggrieved may appeal in cases prescribed in this title."].) Although Whole Foods is correct Giampietro was not adversely affected by the order denying its motion for final approval of the settlement, he was plainly aggrieved by the subsequent order denying his request for attorney fees and has standing to appeal that order. (See *Brun v. Bailey* (1994) 27 Cal.App.4th 641, 650 [32 Cal.Rptr.2d 624] [nonparty has standing to appeal trial court's denial of motion for protective order to direct payment of expert witness fee].)[7]

2. *The Trial Court Did Not Err in Concluding Giampietro Was Ineligible for Attorney Fees Under the Equitable Substantial Benefit Doctrine*

 a. *Governing Law*

▮ Under the general American rule, codified in section 1021, a prevailing litigant is not entitled to an award of attorney fees in the absence of statutory or contractual provisions. (*Trope v. Katz* (1995) 11 Cal.4th 274, 278 [45 Cal.Rptr.2d 241, 902 P.2d 259].)[8] The Supreme Court, however, has relied on its inherent equitable authority to develop several additional exceptions to the American rule. (*Trope,* at p. 279.) Two of those exceptions are the

---

[7] The substantive holding of *Brun v. Bailey, supra,* 27 Cal.App.4th 641, that a treating physician called as a percipient witness is not entitled to an expert witness fee, was abrogated by statute. (§ 2034, subd. (i)(2); see *Baker-Hoey v. Lockheed Martin Corp.* (2003) 111 Cal.App.4th 592, 602 [3 Cal.Rptr.3d 593].) However, its procedural holding, that a nonparty may appeal an order denying a motion for an award of fees, remains good law.

[8] Section 1021 provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereafter provided."

common fund doctrine and the substantial benefit doctrine. (*Serrano III, supra,* 20 Cal.3d at pp. 34–38; *Serrano v. Unruh* (1982) 32 Cal.3d 621, 627 [186 Cal.Rptr. 754, 652 P.2d 985]; *Cziraki v. Thunder Cats, Inc.* (2003) 111 Cal.App.4th 552, 557 [3 Cal.Rptr.3d 419].)

█ The common fund doctrine, frequently applied in class actions when the efforts of the attorney for the named class representatives produce monetary benefits for the entire class, is rooted in the "historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from the other parties enjoying the benefit." (*Alyeska Pipeline Co. v. Wilderness Society* (1975) 421 U.S. 240, 257 [44 L.Ed.2d 141, 95 S.Ct. 1612]; *Serrano III, supra,* 20 Cal.3d at p. 34.) The doctrine is based on the commonsense notion that the "one who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs." (*Quinn v. State of California* (1975) 15 Cal.3d 162, 167 [124 Cal.Rptr. 1, 539 P.2d 761].) An award of fees under the equitable common fund doctrine is " 'analogous to an action in quantum meruit: The individual seeking compensation has, by his actions, benefited another and seeks payment for the value of the service performed.' " (*Serrano v. Unruh, supra,* 32 Cal.3d at p. 628.) An essential prerequisite to the application of the equitable common fund principle is the existence of a "fund" from which attorney fees may be paid. (*Serrano III, supra,* 20 Cal.3d at p. 35.)

█ The substantial benefit doctrine is an extension of the common fund doctrine. It applies when no common fund has been created, but a concrete and significant benefit, although nonmonetary in nature, has nonetheless been conferred on an ascertainable class. (*Serrano v. Unruh, supra,* 32 Cal.3d at p. 629.) We recently recognized application of the substantial benefit doctrine in shareholder derivative cases, when the action produces a substantial benefit for the corporation on whose behalf the action was prosecuted. (*Cziraki v. Thunder Cats, Inc., supra,* 111 Cal.App.4th at pp. 562–565; see also *Fletcher v. A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313, 318–325 [72 Cal.Rptr. 146] [corporation benefiting from derivative action must pay shareholder's attorney fees under substantial benefit doctrine].)

While there is no direct authority in California applying the substantial benefit doctrine to award attorney fees to an objector who successfully opposes settlement of a class action, a number of federal courts have endorsed use of the doctrine to award attorney fees to an objector whose actions substantially benefit class members. (See, e.g., *Reynolds v. Beneficial Nat. Bank* (7th Cir. 2002) 288 F.3d 277 (*Reynolds*) [attorney fees may be

appropriate under substantial benefit doctrine when efforts of objector produce improvement in settlement]; *Shaw v. Toshiba America Information Systems, Inc.* (E.D. Tex. 2000) 91 F.Supp.2d 942, 972 [attorney fees appropriately awarded to objector who succeeded in doubling length of time available for class members to redeem coupons, thereby conferring substantial benefit on class]; *In re Domestic Air Transp. Antitrust Litigation* (N.D. Ga. 1993) 148 F.R.D. 297, 358 [when objections " 'produced a beneficial effect upon the progress of the litigation, an award of fees is appropriate,' " quoting *Frankenstein v. McCrory Corp.* (S.D.N.Y. 1977) 425 F.Supp. 762, 767]; cf. *Petrovic v. Amoco Oil Co.* (8th Cir. 1999) 200 F.3d 1140, 1156 (*Petrovic*) [no entitlement to attorney fee award when objectors did little to increase amount of settlement for benefit of class].)

 The leitmotiv of all these opinions is that the objector must establish his or her efforts produced a concrete benefit for the class, allowing it to recover more (or otherwise be in an improved position) than it would have in the absence of the objector's efforts. (*Reynolds, supra,* 288 F.3d at p. 288.) For example, when the objector causes a settlement to be disapproved, resulting in a subsequent, more beneficial settlement for the class, the objector is entitled to fees from the common settlement fund. (See, e.g., *Shaw v. Toshiba America Information Systems, Inc., supra,* 91 F.Supp.2d at p. 972.) On the other hand, if, following disapproval of a proposed settlement, the defendant prevails on the merits or a subsequent settlement provides a smaller recovery for the class than the original, the objector has achieved nothing for the class. Under those circumstances an attorney fee award is properly denied. Similarly, if the objector's position and arguments are simply cumulative, the trial court may properly deny fees on the ground the objector has added nothing of value, even if the objections are sustained. (*Reynolds,* at pp. 288–289 [where other parties had vigorously argued against proposed reversion in settlement, objectors "added nothing" to settlement and attorney fees under substantial benefit doctrine properly denied]; *Petrovic, supra,* 200 F.3d at p. 1156.)

### b. *Giampietro Did Not Confer a Substantial Benefit on a Class of Beneficiaries Subject to Court Order*

Giampietro argues a significant benefit was conferred on the absent putative class members because, due to his counsel's efforts, those individuals are not subject to a broad-based release of all claims against Whole Foods, as provided in the proposed settlement agreement. Giampietro's argument suffers from two flaws. First, the proposed settlement contained an opt-out provision, permitting any member of the putative class who wished to preserve his or her right to assert violations of the Health and Safety Code or unfair competition law against the defendants to do so. Disapproval of the

proposed settlement was unnecessary to accomplish this "preservation" and "vindication" of statutory rights intended to protect the health and safety of consumers.[9] Second, even assuming the right to assert statutory claims against Whole Foods and the other defendants was preserved, Giampietro did not establish there was any value to those potential claims. Indeed, although the proposed general release swept more broadly than the claims asserted by Consumer Cause in the litigation itself, the voluntary dismissal of the lawsuit once Whole Foods moved for summary judgment suggests the core claims lacked substantial merit.

More importantly, even if we were to assume Giampietro's efforts in preventing class certification and approval of the proposed settlement conferred a benefit on an identifiable class, the beneficiaries—the members of the putative class consisting of the general public in California—are no longer before the court. Yet neither Consumer Cause nor Whole Foods nor Old Durham nor Kokoro, the parties to the action, is alleged to have benefited from the objector's successful efforts to persuade the trial court to jettison the parties' mediated resolution of the lawsuit and deny class certification. We are thus faced with a request by an unnamed putative class objector to have his attorney fees paid by a party for whom the objector's efforts yielded no benefit. There is simply no basis in the quantum meruit principle underlying these equitable exceptions to the American rule that would permit such an outcome. Understandably, Giampietro does not propose that the absent putative class members somehow be assessed for their fair share of his attorney fees.

Apparently recognizing this obstacle to payment of his fees, Giampietro urges he is entitled to an award of fees whether or not his actions conferred a concrete benefit because he provided an "adversarial context" to the litigation, assisting the trial court in fulfilling its obligation to protect

---

[9] Giampietro's contention class members were effectively denied the right to opt out because the notice of the class settlement was constitutionally deficient, even if correct, does not alter our analysis. None of the unnamed class members would have been bound by a settlement that did not comply with minimal due process requirements. (*Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 811–812 [86 L.Ed.2d 628, 105 S.Ct. 2965] ["If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, [fn. omitted] it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' [Citations.] The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court. Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members. [Citation.]"].)

absent class members from an unwarranted class action and an unfair settlement. In advancing this argument, Giampietro relies on language in some of the federal cases recognizing that individuals who come forward with objections to a proposed class settlement can provide a valuable service to the litigation: "It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally. This participation is encouraged by permitting lawyers who contribute materially to the proceeding to obtain a fee." (*Reynolds, supra,* 288 F.3d at p. 288; see also *Bell Atlantic Corp. v. Bolger* (3d Cir. 1993) 2 F.3d 1304, 1310 ["objectors play an important role by giving courts access to information on the settlement's merits" in a context in which class and defense counsel "can be expected to spotlight the proposal's strengths and slight its defects"].) Yet, as Circuit Judge Richard Posner recognized in *Reynolds,* the case principally relied on by Giampietro, adversarial context, by itself, is not enough to justify an award of fees: The principles of restitution underlying equitable fee awards "require, however, that the objectors produce an improvement in the settlement worth more than the fee they are seeking; *otherwise they have rendered no benefit to the class.*" (*Reynolds,* at p. 288, italics added.) In other words, providing assistance to the court in its effort to protect class members from unfair settlements, while laudable, alone is not a sufficient basis for recovery of attorney fees. The objector's efforts must also produce significant benefit to the class of passive beneficiaries from whom it seeks payment of its fees.

Giampietro has not, and cannot, show that his efforts resulted in any substantial benefit to the absent members of the putative class. Even if he could, equity does not demand payment of his fees by those who were not the beneficiaries, passive or otherwise, of his efforts. Accordingly, the trial court did not err in denying Giampietro's request for attorney fees under the equitable substantial benefit doctrine.

### 3. *Giampietro Is Not Entitled to Attorney Fees Under Section 1021.5*

#### a. *Governing Law*

Enacted in 1977, section 1021.5 codifies a third equitable exception to the American rule, the private attorney general doctrine articulated in *Seranno III, supra,* 20 Cal.3d 25. (See *Serrano v. Unruh, supra,* 32 Cal.3d at p. 624, fn. 1 [§ 1021.5 codifies private attorney general doctrine for awarding fees].) The fundamental objective of the doctrine is to encourage suits effectuating a strong public policy by awarding substantial attorney fees to those who successfully bring such suits and thereby benefit a broad class of citizens. (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200]; *Bruno v. Bell* (1979) 91

Cal.App.3d 776, 785 [154 Cal.Rptr. 435].) The doctrine " ' "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." ' " (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 [21 Cal.Rptr.3d 331, 101 P.3d 140] (*DaimlerChrysler*).)

■ To qualify for an attorney fee award under section 1021.5, the party seeking attorney fees must show: (1) he or she is a successful party in an action brought to enforce an important right affecting the public interest; (2) a significant benefit (pecuniary or nonpecuniary) has been conferred on the general public or a broad class of persons; and (3) the necessity and financial burden of private enforcement transcends the litigant's personal interest in the controversy. (*City of Hawaiian Gardens v. City of Long Beach* (1998) 61 Cal.App.4th 1100, 1112 [72 Cal.Rptr.2d 134].)

Whole Foods contends Giampietro fails to satisfy the first requirement because he was never a party to the action. Giampietro, on the other hand, insists an unnamed member of a putative class who successfully objects to class certification and a proposed classwide settlement agreement must be deemed a "successful party" as that term is used in section 1021.5 whether or not the objector has formally intervened in the action. (See *DaimlerChrysler, supra,* 34 Cal.4th at p. 565 [advocating a "broad, pragmatic view of what constitutes a 'successful party' " under § 1021.5]; see also *Wershba v. Apple Computer, Inc., supra,* 91 Cal.App.4th at p. 253 [objecting to classwide settlement is procedural equivalent of intervening].)

The debate whether formal intervention is required before an objector to class certification may obtain attorney fees under section 1021.5 is misdirected. Even if Giampietro had been permitted to intervene in the action, his efforts, confined to defeating class certification and the proposed classwide settlement of a Proposition 65 lawsuit regarding the absence of warning labels on firewood and progesterone cream sold by Whole Foods, do not qualify him for attorney fees as "a successful party . . . in an[] action which has resulted in the enforcement of an important right affecting the public interest." (§ 1021.5; see *Nelson v. County of Los Angeles* (2003) 113 Cal.App.4th 783, 795 [6 Cal.Rptr.3d 650] [purpose of private attorney general doctrine is "to provide some incentive for the plaintiff who acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right . . . ."].)

b. *Giampietro Did Not Act as the Functional Equivalent of a Private Attorney General Pursuing an Action Resulting in the Enforcement of an Important Public Right*

Relying on *DaimlerChrysler, supra,* 34 Cal.4th at pages 572, 576–577 [21 Cal. Rptr.3d 331, 101 P.3d 140], in which the Supreme Court reaffirmed California's acceptance of the "catalyst theory," which permits recovery of attorney fees under section 1021.5 if the plaintiff has realized its litigation objectives even if no final judgment is obtained, Giampietro argues he effectively became the "successful party" in the action when the trial court sustained his objections, denied final certification of the putative class and disapproved the proposed class settlement. Giampietro asserts predicating his right to recover attorney fees on whether he actually prosecuted an action would unduly elevate procedure over substance and observes it is "the nature of the relief sought, not the label or procedural device by which the action is brought, [that] is determinative of the right to seek fees" under section 1021.5. (*In re Head* (1986) 42 Cal.3d 223, 226 [228 Cal.Rptr. 184, 721 P.2d 65] [prisoners who successfully challenged Department of Corrections furlough program were entitled to fees under § 1021.5, even though action was brought in nature of habeas corpus rather than civil mandate proceeding].)

■■■ Although Giampietro unquestionably realized the objectives of defeating class certification and the proposed classwide settlement, it is the objective of the *lawsuit* that is critical to recovering fees under section 1021.5, not the success of an ancillary part of the action. By its terms, section 1021.5 authorizes attorney fees if the *action* results in the enforcement of an important public right affecting the public interest. Likewise, the purpose of section 1021.5's authorization of a fee award is to give private citizens an incentive to bring *lawsuits* enforcing important public rights. (*DaimlerChrysler, supra*, 34 Cal.4th at p. 565; see *Nelson v. Colunty of Los Angeles, supra*, 113 Cal.App.4th at p. 795.) To be sure, an individual may fulfill his or her role as a private attorney general in a variety of ways: prosecuting an action (*In re Head, supra*, 42 Cal.3d at p. 226); defending it (*County of San Luis Obispo v. Abalone Alliance* (1986) 178 Cal.App.3d 848, 869 [223 Cal.Rptr. 846]); or shouldering the burden of litigation after having intervened in the action (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43 [24 Cal.Rptr.3d 72]). In all cases, however, whether a party has been successful is measured by the resolution of the *action*, not an ancillary part of the litigation. (See, e.g., *DaimlerChrysler, supra*, 34 Cal.4th at p. 567 [it is the impact of the action on modifying the defendant's behavior, not whether it results in a final judgment, that is determinative of whether a plaintiff is successful under § 1021.5]; *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 684–685 [186 Cal.Rptr. 589, 652 P.2d 437] [a plaintiff may be successful party in action under § 1021.5 even though the defendant's motion for summary adjudication of certain claims was resolved in the defendant's favor; success is determined

not on "appearance," but " 'whether or not the *action* served to vindicate an important right' " (italics added)]; *Woodland Hills Residents Assn., Inc., supra,* 23 Cal.3d at p. 938 [§ 1021.5 award of attorneys fees to the plaintiff proper even where the plaintiff *won the case* on a preliminary issue].)

As Giampietro acknowledges, no case has authorized an award of attorney fees under section 1021.5 to an objector whose efforts to deny class certification or to block a proposed class settlement were successful. Nor does *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287 [255 Cal.Rptr. 704] (*Drew*), a case that Giampietro urges is "strikingly similar" to the case at bar, support his interpretation of section 1021.5.

In *Drew*, after the city had passed a resolution of intent to go forward with a special tax assessment, one of the city's residents, Charles Drew, protested, arguing the tax could not be imposed without approval of the electorate. Thereafter, the city initiated a special statutory validation proceeding to determine the legality of the assessment. Drew answered the complaint as a person interested in the matter (§ 861.1) and argued the assessment was illegal. Drew prevailed and then sought his attorney fees under section 1021.5, asserting he had protected a large class of persons from an unlawful levy. Observing that, in the unique context of a bond validation proceeding, it is the defendant private citizen, not the city plaintiff, who is cast in the role of protecting the public interest, the Court of Appeal agreed attorney fees were warranted, reasoning Drew's participation in the validation action involved an important public right, benefiting similarly situated taxpayers. (*Drew, supra,* 207 Cal.App.3d at pp. 1299, 1302 ["The core of a validation action is a declaration of rights between disputing parties. When the defendant prevails in such an action his claim of right is vindicated."].)

Giampietro asserts that, akin to the tax objector in *Drew*, an objector to class certification and a proposed classwide settlement is the only person safeguarding the rights of the putative class members from collusion between the named class representative, on the one hand, and defendants intent on binding absent class members to an unfair and overly broad settlement and release, on the other hand. But in *Drew*, the objecting intervener/defendant was an essential party to the litigation, bearing the full burden of pursuing the case to enforce an important statutory right. Giampietro, in contrast, interposed objections that, while sustained, simply permitted the original parties to the lawsuit (Consumers Union and Whole Foods) to continue with their lawsuit as initially filed.

More significantly, unlike in *Drew*, Giampietro's efforts did not result in the enforcement of an important right affecting the public interest. Although Giampietro insists he protected the right of members of the putative class to

sue Whole Foods for violations of the Health and Safety Code unhindered by an overbroad release that might otherwise bar their claims, the putative class members had the right to opt out of the class and the proposed classwide settlement. Freeing putative class members from the constraints of a proposed settlement agreement they had the right to disregard by exercising their opt-out right is hardly the kind of important public right contemplated by section 1021.5. (Compare *DaimlerChrysler, supra,* 34 Cal.4th at p. 578 [lawsuit challenging automobile manufacturer's false statements about its vehicles implicates issues of public safety]; *In re Head, supra,* 42 Cal.3d at p. 226 [prisoners who successfully challenged Department of Corrections furlough program enforced important constitutional and statutory rights relating to confinement of prisoners] with *Baxter v. Salutary Sportsclubs, Inc.* (2004) 122 Cal.App.4th 941, 948 [19 Cal.Rptr.3d 317] [lawsuit to compel health club to ensure membership contracts conformed to the letter rather than to the spirit of the Civil Code amounted to a "bounty hunt" for "niggling statutory violations" that neither harmed nor threatened to harm anyone]; *Balch Enterprises, Inc. v. New Haven Unified School Dist.* (1990) 219 Cal.App.3d 783 [268 Cal.Rptr. 543] [developer who successfully challenged school district's resolution imposing facilities fee prevailed only on the technical ground the resolution was procedurally defective and did not enforce or vindicate important public right].)

In concluding Giampietro is not entitled to attorney fees under section 1021.5 because he neither was a successful party in an action (even if his intervention motion had been granted) nor enforced an important public right, we do not intend to belittle the valuable role Giampietro or any objector may play in assisting the court in a hearing on a motion for final class certification and settlement approval. The Legislature, however, has not recognized assistance to the court as a basis for an award of attorney fees under section 1021.5.[10]

### c. *Giampietro Did Not Confer a Significant Benefit on the Members of the Putative Class*

Even if Giampietro were correct that an objection to a motion for class certification could be taken in isolation as a piece of stand-alone litigation and that, as a successful objector to class certification and a proposed classwide settlement, he vindicated important rights of the putative class members to pursue their statutory claims against the defendants, for the

---

[10] As we have suggested, an objector who obtains a significant benefit for the members of the putative class may be entitled to attorney fees under the equitable substantial benefit theory. (See *Guardians of Turlock's Integrity v. Turlock City Council* (1983) 149 Cal.App.3d 584, 601, fn. 12 [197 Cal.Rptr. 303] [entitlement to attorney fees under substantial benefit theory is independent of entitlement under private attorney general doctrine].)

reasons we have explained (see discussion, *ante*, pt. 2.b.), Giampietro's efforts did not confer any significant benefit on the members of the putative class. For this reason alone, Giampietro's motion for fees under section 1021.5 was properly denied.[11]

## DISPOSITION

The orders denying Giampietro's motion for attorney fees and his motion to intervene are affirmed. Whole Foods is to recover its costs on appeal.

Woods, J., and Zelon, J., concurred.

A petition for a rehearing was denied March 30, 2005, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 29, 2005. Brown, J., did not participate therein.

---

[11] Giampietro filed a protective appeal from the order denying his motion to intervene, requesting we review that order only to the extent we conclude intervention was necessary to preserve his right to attorney fees under section 1021.5. Because our decision to affirm the trial court's order denying attorney fees under section 1021.5 is not based on Giampietro's failure to satisfy the substantive requirements of section 1021.5, the protective appeal is effectively moot.